[Civil No. 4095. Filed November 13, 1939.]

[95 Pac. (2d) 566.]

JOSEPH D. SCHREIBER, Appellant, v. HARRY W. HILL, Receiver of Intermountain Building & Loan Association, a Utah Corporation, Appellee.

Messrs. Silverthorne & Silverthorne, for Appellant.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellee.

LOCKWOOD, J.—This appeal comes before us on an agreed statement of facts which is, in substance, as

follows: On the 17th of June, 1937, A. D. Stanley and L. Faye Stanley, his wife, hereinafter called defendants, were the holders of the record title to lot 12, block 1, Brentwood Addition to the City of Phoenix. On that date, Harry W. Hill, as receiver of the Intermountain Building & Loan Association, a Utah corporation, recovered a judgment against the Stanleys, in the superior court of Maricopa county, for the sum of approximately $282, which judgment was docketed in the office of the clerk of the superior court, and a transcript thereof recorded in the office of the county recorder. Thereafter, and on the 12th of August, the Stanleys executed and acknowledged a deed to said premises in favor of Joseph D. Schreiber, and left it with R. L. Sloan of the Arizona Title Guarantee & Trust Company, hereinafter called the trust company, with oral instructions that he should deliver the deed to Schreiber if, and when, the latter was satisfied as to the title he would receive to the premises. On August 18th, the defendants executed a declaration of homestead on said property in proper form, which declaration was duly recorded in the office of the county recorder of Maricopa county on August 19th. On August 25th Schreiber paid to L. Faye Stanley the purchase price agreed upon, and the latter notified the trust company to deliver the deed to Schreiber, which was done, and the deed recorded on the same day in the office of the county recorder. Thereafter, and on the 3d of October, 1938, an execution was issued on the judgment aforesaid and a levy made on the premises described herein, whereupon Schreiber moved to quash the writ of execution on the ground that the property was exempt from execution under the judgment on which the writ was issued. The motion to quash was denied, and this appeal was taken.

The question before us is whether the declaration of homestead made by defendants rendered the property

exempt from execution on the judgment referred to herein. This will be determined by the construction of sections 1731 and 1733, Revised Code of 1928, which read as follows:

"§ 1731. *Who may hold; extent and value.* Every person who is the head of a family, and whose family resides within this state, may hold as a homestead, exempt from attachment, execution and forced sale, real property to be selected by him, or her, which homestead shall be in one compact body, not exceeding four thousand dollars in value, and consisting of the dwelling house in which the claimant resides and the land on which the same is situated, or of land that the claimant shall designate, provided the same is in one compact body."

"§ 1733. *Exempt from time of filing.* The homestead shall, from the date of recording the claim, be exempt from attachment, execution and forced sale, and from sale under any judgment or lien existing prior to the recording of such claim, except a mortgage executed by the husband and wife, if the claimant be married, or by the claimant if unmarried, and except a lien for labor or material that has attached before such land was claimed as a homestead. No such sale made after the recording of the claim of homestead shall be valid or convey any interest in such homestead, whether made under a judgment existing before or after the recording of such claim."

These sections first appeared in our law in chapter 79 of the session laws of 1907, and were carried forward in the codes of 1913 and 1928 in substantially the same form. We have had them under construction in a number of cases. It will be observed that our statute, unlike the homestead law of many other states, does not limit the right to claim a homestead to the property on which the debtor resides, but permits it to be declared on any land owned by him, provided the same is in a compact body and not of a value in excess of four thousand dollars. In the case of *Wilson* v.

*Lowry,* 5 Ariz. 335, 52 Pac. 777, 779, we declared the general policy of the homestead law as follows:

" . . . It is the well-settled policy of the courts to liberally construe those humane and beneficial provisions of the law exempting certain property from execution for the payment of debts. The state has an interest in protecting families, and especially helpless children, against pauperism, and securing to them the means of reasonable comfort and education. . . . "

Following this, in the case of *Wuicich* v. *Solomon-Wickersham Co.,* 18 Ariz. 164, 157 Pac. 972, 973, we said:

" . . . Under this privilege he may select unimproved land, provided it is in one compact body and does not exceed $4,000 in value, or he may select, with the same limitation, improved business property or improved farming land, whether it has a dwelling on it or not. In other words, the Legislature intended that every head of a family living in this state should have exempt from attachment, execution, or forced sale at least $4,000 worth of real property, whether it was utilized as a home or not. If claimed as a home, it must be occupied as such, and cannot exceed in value $4,000; if not used and claimed as a home, it must be limited to a valuation of $4,000, and, whichever it be, the dominating central idea, under our statute, is not, like that in most of the states, that it shall be occupied, *but that it shall be a fund or asset to which the family may look for support, free from creditors."* (Italics ours.)

Again, in *Union Oil Co.* v. *Norton-Morgan Commercial Co.,* 23 Ariz. 236, 202 Pac. 1077, 1079, we used the following language:

" . . . We think the dominant idea under our law is to save exempt to the family the amount of money therein designated as the value of a homestead. This is evident because the homestead is not necessarily the dwelling house or home of the family. It may be of unimproved real property, with no limit upon its quantity except as fixed by its value, and should it be sold

in the manner provided by paragraph 3295 of the Civil Code, the officer, out of the proceeds arising therefrom, is first required to pay to the homesteader 'the sum of $4,000 which shall be protected from all legal process.' When our homestead act (Chapter 1, title 20, Civil Code) is read in connection with the statute providing for judgment liens, paragraph 3633, Civil Code, the conclusion seems inevitable that the purpose and intent of the Legislature was to protect for the family a piece of land or real estate not to exceed in value $4,000 from attachment, execution, and forced sale, as also from any judgment lien. To that value the homestead shall be free and clear of all liens, even those attaching before the declaration of homestead."

In *Security Trust & Sav. Bank* v. *McClure,* 29 Ariz. 325, 241 Pac. 515, 517, we again considered the question and said:

"But, it is said, such exemption did not apply when the Rileys sold the property, and that the lien was merely suspended during their ownership and revived when the property passed from their possession. We do not think this last position can be maintained. It will be observed that under paragraph 3288, Revised Statutes of Arizona 1913, Civil Code, the homestead is not necessarily the dwelling house in which the claimant resides, but may be entirely different and distinct land, so long as it is compact in form, and does not exceed the value of $4,000. It is evident from the language of this statute that, as is stated in *Union Oil Co.* v. *Norton-Morgan Commercial Co., supra:*

" 'We think the dominant idea under our law is to save exempt to the family the amount of money therein designated as the value of a homestead.'

"If such be the case, since to hold that a sale of the homestead revived any judgment liens on record against its owner and declarant, and made them a lien upon the property in the hands of the purchasers, would be to destroy the value of the property as money, and make it worthless to the family except for the purpose of residence, we are of the opinion that the judgments upon which defendant relies cannot be set up as valid liens against the property, even after it is sold by the declarant."

It will be seen that we have consistently held that the real exemption given by our statute is the sum of $4,000 to protect the family, rather than the particular tract of land upon which they live as a home. Such being the case, and it being unquestioned that a declaration of homestead can be made at any time before an actual sale of the property, it would appear that the owners would have a right to make a declaration of homestead for the express purpose of passing a clear title to the property, for otherwise the intent of the law to preserve its value to them in money would be defeated, since they could not sell the property for its full value.

Counsel for the receiver, however, contend that in the case of *Strahan* v. *Haynes,* 33 Ariz. 128, 262 Pac. 995, 1000, we have held that a homestead declaration may not be made for the purpose of defeating the claims of a creditor. The facts in that case were as follows: Strahan had voluntarily entered into an executory contract for the sale of certain real estate. Thereafter, for some reason, she decided she did not wish to carry out her contract, and made a declaration of homestead on the property, and claimed that under the homestead exemption law above cited she could not be compelled to carry out her contract of sale. We held that the statute applied to "forced" sales and not to agreements of sale voluntarily entered into by the owner of the land, and that to permit her to use the homestead law for the purpose of evading her voluntary agreement to sell would be a fraud, stating:

" . . . It was never intended by the Legislature, in our opinion, that the homestead law should be a means of defrauding innocent parties, and we think an effort to use a declaration of homestead on a piece of property which the declarant had freely and voluntarily agreed to sell before such declaration, to invalidate such agreement to sell, is on its face an attempted fraud on the purchaser. *The true purpose of the*

*homestead law is to protect existing rights against in-
voluntary loss, and not to restore rights already vol-
untarily parted with."* (Italics ours.)

It is urged that the delivery of the deed to the trust
company was not, as a matter of law, a true escrow.
We think it unnecessary to decide that question. It
was of importance in the Strahan case, for there the
owner of the land was attempting to avoid her contract
of sale. In the present case, the owners were anxious
to perform, and this being so, we think it makes no
difference whether they could have been forced to
carry out their contract of sale or not.

The order of the superior court of Maricopa county
is reversed, and the case remanded with instructions to
grant the petition to quash the writ of execution.