Herbert B. FINN, as Trustee in Bankruptcy of the Estate of Richard M. Aldridge, etc., Appellant,

v.

Joseph D. GILBERT et al., Appellees.

No. 17580.

United States Court of Appeals Ninth Circuit.

June 27, 1962.

Rehearing Denied July 30, 1962.

Moore & Jacobowitz, and Henry Jacobowitz, Phoenix, Ariz., for appellant.

Christy, Kleinman, Peterson & Hoyt, and Chester Peterson, Phoenix, Ariz., for appellee.

Before HAMLEY, HAMLIN and BROWNING, Circuit Judges.

HAMLIN, Circuit Judge.

On April 22, 1960, Richard M. and Eloise M. Aldridge, husband and wife, filed a petition in bankruptcy and were adjudicated bankrupts. On February 16, 1960, within four months prior to the filing of the petition in bankruptcy, the bankrupts conveyed by warranty deed certain real property to Joseph D. Gilbert and Lambert Owen Gilbert, co-partners doing business as L. O. Gilbert Painting & Decorating Company, appellees herein. The deed to the property was recorded on the day of the conveyance. Herbert B. Finn was duly appointed trustee in bankruptcy of the Aldridge estate. He timely filed a petition asking the referee in bankruptcy for an order setting aside the conveyance to appellees as a preferential transfer.[1]

In the proceedings before the referee the appellees contended that at the time of the conveyance the property involved was subject to a valid homestead exemption under Arizona law and that exempt property conveyed by a bankrupt can't be reached by a trustee under the preferential transfer provisions of the Bankruptcy Act. Alternately, the appellees contended that some of the elements essential to a preferential transfer were not present.

After a hearing the referee made findings of fact favorable to the trustee, and appellees were ordered to turn over to the

---

1. Section 60 of the Bankruptcy Act, 11 U.S.C.A. § 96, provides in part as follows:

"(a) (1) A preference is a transfer * * * of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition * * * the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

* * * * *

"(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby * * has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property * * *."

trustee the proceeds received by them from the sale of the property involved.[2]

A petition to review the referee's order was filed in the United States District Court for the District of Arizona. In this petition appellees complained only of the following findings of the referee:

3. That at the time of said transfer the bankrupts were insolvent, and respondents knew, or had reasonable cause to believe, that said bankrupts were insolvent.

5. That at the time of the transfer of the subject real property by the bankrupts to respondents [appellees], said property was not exempt from claims of creditors under the laws of the State of Arizona or under the Act of Congress relating to bankruptcy.

2. The appellees sold the property here in question for the approximate sum of $5,-000 after the adjudication of bankruptcy.

3. "Richard M. Aldridge and James R. Smitham were co-partners in an advertising agency doing business under the name of Park Lee Limited. Both co-partners, their spouses, as well as the partnership, are bankrupts herein.

"During the latter part of December, 1959, Park Lee Limited, bankrupt, tendered to * * * [appellees] three checks (Trustee's Exhibit No. 1 in evidence) aggregating an amount of $6300.-00; said sum was to be applied toward the payment of an invoice (Trustee's Exhibit No. 2) theretofore transmitted by * * * [appellees] to Park Lee Limited, bankrupt. [Appellees] * * * promptly credited Park Lee Limited, bankrupt, with said amount. However, all three checks were returned by the drawee bank to the * * * [Appellees] during January of 1960 for reason of insufficient funds in the account of Park Lee Limited, bankrupt.

"Shortly thereafter, Joseph D. Gilbert, managing partner of * * * [Appellees], engaged a firm of attorneys, and subsequently substituted another firm of attorneys, to aid him in effecting the collection of the obligation created by said 'insufficient fund checks.' In an effort to avoid imminent criminal prosecution on said checks, soon to be instituted by * * * [appellees], Richard M. Aldridge, bankrupt, joined by his wife, Eloise M.

After hearing on appellees' objections the district court made an order without an explanatory memorandum or opinion "that the order of the referee * * * is reversed." The trustee Finn timely appealed to this court, and we have jurisdiction pursuant to section 24 of the Bankruptcy Act, 11 U.S.C.A. § 47.

There was no transcript of the proceedings before the referee, but the evidence was summarized by the referee in his certificate to the district court upon appellees' petition to review his order. The certificate was accompanied by the five exhibits which had been presented to the referee as evidence. As background for the points involved in this appeal the referee's summary of the evidence is set forth in the margin.[3]

Aldridge, bankrupt, transferred to * * [appellees] by means of a Warranty Deed, recorded in the Maricopa County Recorder's Office on February 16, 1960, Docket 3161, page 411, their right, title and interest in and to their residence of that time, their equity being of the approximate value of $3000.00. The sole consideration for the aforesaid transfer was the return of the 'insufficient fund checks' by * * * [appellees] to the bankrupts.

"At or before the time of the aforesaid transfer, Joseph D. Gilbert, managing partner of * * * [appellees], knew that the bankrupts had terminated their business, and suspected that the bankrupts were insolvent, although he did not recall, on deposition, whether or not he had personally inquired into their financial condition. Furthermore, he had never trusted the bankrupts, nor did he ever have any confidence in the financial ability of the bankrupts.

"Counsel for * * * [appellees] conceded in open court as well as in his brief that all of the elements of a preferential transfer existed herein save and except the element of a debtor-creditor relationship between the bankrupts and * * * [appellees]. In other words, he took issue with but one factual element of a preferential transfer, namely, the element of debtor-creditor relationship.

"A Declaration of Homestead executed by Richard M. Aldridge, bankrupt, on the realty conveyed to * * * [appellees], was recorded on March 10, 1960, in the Maricopa County Recorder's office, Docket

Because the district court did not indicate the ground or grounds upon which it reversed the referee's order, there are two questions involved in this case: (1) whether the property conveyed by the bankrupts to the appellees was subject to a valid homestead exemption under the laws of Arizona at the time of the conveyance, and (2) if the property was not exempt, whether the evidence was sufficient to support the referee's finding that at the time of the conveyance the appellees knew or had reasonable cause to believe that the bankrupts were insolvent.

## I

As to the first question in this case, whether there was a valid homestead exemption when the property was conveyed, the undisputed facts show the property was conveyed by the bankrupts to the appellees on February 15, 1960, and a document entitled "Declaration of Homestead" bearing date of February 10, 1960, and the signature of the bankrupt, Richard Aldridge, was recorded in the Maricopa County, Arizona, Recorder's office on March 10, 1960.

Both parties concede that the property if exempt under Arizona law when conveyed could not be set aside as a preferential transfer, but if not exempt the conveyance could be set aside as a preferential transfer providing all other elements of such a transfer were present.

It is the position of trustee Finn that two requirements must be met in order to establish a valid homestead exemption under the Arizona statutes: (1) a declaration must be executed in proper form and (2) the declaration must be recorded in the office of the county recorder. Since only one step was accomplished at the time the property in question was conveyed, namely, the execution of the declaration of homestead on February 10, 1960, and since the declaration was not recorded until after the conveyance of the

property on February 15, 1960, he contends the homestead exemption was never validly established upon the conveyed property.

It is the position of appellee that the recording of the declaration of homestead was not required for the establishment of a valid homestead exemption, and that at the time the property was conveyed to the appellees it was subject to a valid homestead exemption by virtue of the prior execution of the declaration of homestead.

The narrow issue, then, is whether recording of the declaration of homestead before the property is conveyed is a condition precedent to establishment of a valid homestead exemption on that property.

The Arizona homestead exemption is provided for in the following sections of the Arizona Revised Statutes:

Section 33–1101. "Every head of a family whose family resides within the state may hold as a homestead, exempt from attachment, execution and forced sale, real property in one compact body, not exceeding $8,000.00 in value, consisting of the dwelling house in which the claimant resides and the land on which it is located, or of land in a compact body which the claimant designates."

Section 33–1102, subd. A. "A person wishing to avail himself of § 33–1101 shall make under oath a claim in writing, showing that he is head of a family, and particularly describing the land claimed and stating the value thereof. The claim shall be recorded in the office of the county recorder in the county where the land lies. * * *"

Section 33–1103, subd. A. "The homestead, from the date of recording the claim, is exempt from attachment, execution and forced sale,

3192, page 336. (No evidence was offered by * * * [appellees] as to when said Declaration of Homestead was executed; however, the Exhibit attached to * * * [appellees'] Petition for Review bears the date of February 10, 1960.)

"On April 22, 1960, the grantors, Richard M. Aldridge, and Eloise M. Aldridge, his wife, as well as the co-partnership dba Park Lee Limited, were adjudged bankrupts."

384

and from sale under a judgment of lien existing prior to recording the claim, except: 1. A duly executed mortgage. 2. A lien for labor or material that attached before the property was claimed as a homestead."

Subd. B. "A sale described in subsection A and not excepted by paragraphs 1 and 2 thereof made after the claim of homestead is recorded is invalid and does not convey an interest in the homestead, whether made under a judgment existing before or after recording of the claim."

The Supreme Court of Arizona has stated that a homestead exemption cannot be impressed upon property "simply by the intention of the owners." In re Graham's Estate, 73 Ariz. 179, 239 P.2d 365, 367 (1951). Although that case involved the residency requirement for claiming a probate homestead, the court, after referring to the Arizona statute for claiming homesteads,[4] pointed out that the homestead had not been perfected in accordance with the one method prescribed by statute.

In Georgouses v. Gillen, 24 F.2d 292 (9th Cir. 1928), Arizona law was involved, and the court stated:

"No such claim [of homestead] was ever filed by any one of the appellants until * * * 16 days after the adjudication [of bankruptcy when] * * * each one of them executed in due form and filed for record a claim * * *. Admittedly, *the state exemption statute is not self-executing,* and when the petition in bankruptcy was filed no part of the property had a homestead status. [Emphasis added.]"[5]

The court held in Georgouses that the interest of the trustee in the bankrupt's insolvent estate which vested in him when the petition in bankruptcy was filed was not defeated by the later filing of a declaration of homestead.

In MacRae v. MacRae, 37 Ariz. 307, 294 P. 280 (1930), the defendant claimed that his property was subject to a homestead exemption and consequently a conveyance thereof could not be in fraud of creditors. The court determined that it was unnecessary to pass upon the validity of defendant's claim, stating,

"[U]nder the law of Arizona a homestead exempt from execution can only be designated in a certain specific and affirmative manner, and nowhere in the record does it appear that the land in question was so selected."[6]

The above mentioned cases persuasively support the proposition that recording of the declaration of homestead is a condition precedent to the establishment of a valid homestead exemption in Arizona. And reading the statements therein in conjunction with the Arizona statutes, particularly section 33–1103, subd. A, supra, which states that the homestead is exempt "from the date of recording the claim," convinces us that recording is essential to a valid claim of homestead in Arizona.

Our reading of Schreiber v. Hill, 54 Ariz. 345, 95 P.2d 566 (1939), upon which appellees rely, does not support the position of appellees that recording is not required. In the Schreiber case the Stanleys were the record owners of property in Arizona on June 17, 1937, when a judgment was obtained against them. The judgment was recorded in the office of the county recorder, and thus the property became subject to a judgment lien. On August 12, 1937, the Stanleys executed and acknowledged a deed to said property in favor of Schreiber and placed it in escrow with a title company. On August 18, 1937, six days later, the Stanleys executed a declaration of homestead in proper form, which declaration

4. The statute cited was section 24–502 of the Arizona Code Annotated which is substantially the same as Arizona Revised Statutes, § 33–1102 which is set out above.

5. 24 F.2d at 292–293.

6. 294 P. at 284.

was recorded properly on August 19, 1937. On August 25, 1937, the Stanleys, having received the agreed upon purchase price, notified the title company to deliver the deed to Schreiber. Schreiber recorded his deed on August 25, the same day. On October 3, 1938, a writ of execution was issued upon the judgment above mentioned and foreclosure was sought on the ground that Schreiber took the property subject to a judgment lien. Schreiber moved to quash the writ of execution on the ground that the property was exempt from execution. The motion to quash was denied and Schreiber appealed to the Supreme Court of Arizona. That court reversed, holding that the property was exempt when sold to Schreiber. The court stated:

> "[I]t being unquestioned that a declaration of homestead can be made at any time before an actual sale of the property, it would appear that the owners would have a right to make a declaration of homestead for the express purpose of passing a clear title to the property * * *." [7]

Appellees contend that the facts of the instant case and Schreiber are identical in that in both cases recording of the declaration of homestead took place after the execution of a deed in favor of the grantees of the property. While appellees' statement in this regard is true the wrong facts are emphasized. The situations in each case are different. In the instant case the deed was executed *and* the property was conveyed before the declaration of homestead was recorded. At the time of recordation the property was not owned by the bankrupt. No interest in the property was retained by them. In Schreiber, although the deed was executed and deposited in escrow before the recordation of the declaration of homestead, the property was not conveyed to Schreiber until after the recordation. At the time of the recordation in Schreiber the property was still owned by the declarant because the sale had not yet been made. Thus, we are of the opinion that the Schreiber case is distinguishable from the instant case because the homestead declaration was recorded before the sale which divested the grantor of ownership. Schreiber does not militate against a holding that recording is a condition precedent to the existence of a valid homestead exemption.

In view of the fact that the Arizona law is not well settled on the point here involved we have been aided in our conclusion that Arizona requires recording as a condition precedent to the establishment of a valid homestead by our investigation of the law in other states. A number of states by statutes which are phrased in somewhat mandatory language require recording as a condition to claiming a homestead.[8] Several states have expressly stated that recording of homestead declarations is required.[9]

## II

One of the elements necessary for setting aside a conveyance as a preferential transfer is that the transferee at the time of the conveyance know or have reasonable cause to believe that the transferor (bankrupt) is insolvent.[10] And

7. 95 P.2d at 568.

8. Ala.Code Tit. 7, § 634; Cal.Civ.Code §§ 1264, 1268; Colo.Rev.Stat. § 77–3–2; Fla.Stat.Ann. § 222.01 (West's 1961); Ida.Code § 55–1205 (Bobbs-Merrill 1957); Ia.Code Ann. § 561.4; Me.Rev.Stat. ch. 112, § 69; Mass.Ann.Laws ch. 188, § 2; Mont.Rev.Code Ann. §§ 33–126, 33–128 (1947); Neb.Rev.Stat. § 40–107; Nev. Rev.Stat. § 115–020; Wash.Rev.Code §§ 6.12.040, 6.12.070.

9. Higdon v. Fields, 6 Ala.App. 281, 60 So. 594 (1912); Quackenbush v. Reed, 102 Cal. 493, 37 P. 755 (1894); Wits-Keets-Poo v. Rowton, 28 Idaho 193, 152 P. 1064 (1915); White v. Rawley, 46 Iowa 680 (1877); Krauss Co. v. Manton, 68 So.2d 131 (La.App.1953); Crain v. Magee, 132 La. 312, 61 So. 385 (1913); Lawton v. Bruce, 39 Me. 484; McGill v. Lewis, 61 Nev. 34, 116 P.2d 581 (1941); Donaldson v. Winningham, 48 Wash. 374, 93 P. 534 (1908); and see In re Grodzins, 27 F.Supp. 521 (D.C.Cal.S.D.1939).

10. Section 60, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b. See note 1 supra.

General Order in Bankruptcy 47, 11 U.S. C.A. following § 53, provides that the district judge upon review of a referee's order shall accept the findings of the referee "unless clearly erroneous." [11]

The second point on this appeal, in view of our holding that the property was not subject to a valid homestead exemption when conveyed, is whether finding number three of the referee that appellees knew or had reasonable cause to believe that the bankrupt was insolvent at the time when the property was conveyed was clearly erroneous.

Although there was no transcript of the proceedings before the referee a summary thereof was presented by the referee to the district court.[12] Exhibits accompanied the referee's certificate. Exhibit 4 is a deposition of appellee Joseph D. Gilbert. In Gilbert's deposition he admitted that he had received four checks from the bankrupt, Aldridge, in the latter part of 1959 totalling $7,685, each of which was returned by the bank because of insufficient funds. One of the checks for $1,200 was paid by a third person. Gilbert testified that he would not have extended $6,000 credit (actually $7,685 minus $1,200, or $6,485) to the bankrupt, that he didn't trust the bankrupt, "that he was suspicious," and that "he was not surprised at what had occurred"; and further, that the bankrupt had advised him that he "had misused the money given him, that he had committed a criminal offense in collecting money from another person, and that he did not want to go to jail." Gilbert also testified in one breath that he "knew" the bankrupt's company had closed its doors in January, 1960, and in the next breath that he "may have known" that Aldridge's company had "closed its doors." Moreover, Gilbert testified that one "might suspect" that Aldridge was insolvent.[13]

We believe the record amply discloses sufficient evidence upon which the referee could find that Gilbert knew or had reasonable cause to believe that Aldridge was insolvent when the property was conveyed. The finding was not clearly erroneous.

We hold, then, (1) that the property when conveyed to appellees was not subject to a valid homestead exemption under Arizona law because the declaration of homestead had not been recorded and (2) that the finding of the referee that appellees knew or had reasonable cause to believe the bankrupt to be insolvent when the property was conveyed (being one of the elements for setting aside a conveyance as a preferential transfer under the Bankruptcy Act) was not clearly erroneous.

The judgment of the district court is reversed.

---

11. Compare Fed.R.Civ.P. 52(a), 28 U.S. C.A.

12. See note 3 supra.

13. "Q. Is it your testimony, then, Mr. Gilbert, that from December of 1959 up to some time in February of 1960 you yourself never knew that Mr. Aldridge was insolvent?

"A. That is a difficult question to answer for the reason that you might suspect it.

"Q. Well, you suspected it, didn't you?

"A. But he had so many different stories to tell that until he had decided to acknowledge it himself you would be presuming. He was broke today, but he was going to have a million dollars tomorrow."