In re Roy CHARLES, Trustee; Tadeusz Kazimierz Zakrzewski, and Andrea Vilma Zakrzewski, Debtors.

Roy CHARLES, Trustee; Tadeusz Kazimierz Zakrzewski and Andrea Vilma Zakrzewski, Appellants,

v.

CARTER SHIELDS, INC., a Wisconsin corporation; The Valley National Bank of Arizona, and Walter J. Gorczynski, Appellees.

BAP No. AZ–81–1257–GKE.

Bankruptcy No. B 80–01247–PHX–Y.

Adversary No. 81–57.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued June 18, 1982.

Decided Oct. 1, 1982.

Amil J. Ajamie, Phoenix, Ariz., for appellants.

Redfield T. Baum, O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, David Brnilovich, Alton, Edwards & Novak, Cameron Morgan, Bayham & Gutterman, Phoenix, Ariz., for appellees.

Before GEORGE, KATZ, and ELLIOTT, Bankruptcy Judges.

OPINION

GEORGE, Bankruptcy Judge:

I.  BACKGROUND

There is no factual dispute in this matter. Prior to May 1980, each of the appellees obtained judgments against the debtors, which were subsequently recorded as liens against the Zakrzewskis' real property, in accordance with Arizona law. On May 21, 1980, however, the Zakrzewskis filed a homestead declaration on their residence and, on June 17, 1980, they filed a petition under Chapter 13 of the Bankruptcy Code. Thereafter, preparatory to the filing of a Chapter 13 plan, the Zakrzewskis and their trustee complained to have title to the Zakrzewski residence quieted in the debtors, without the attachment of the lienhold claims of the appellees and others. Upon a motion for summary judgment by the Zakrzewskis and trustee, and similar countermotions by the appellees, the trial court held the liens of the latter to constitute valid encumbrances on the Zakrzewskis' residence and refused to remove the same from the debtors' record of title. This appeal then ensued.

II.  ANALYSIS OF THE FACTS AND THE LAW

At the heart of the appellants' position are two rather dated Arizona Supreme

Court cases, which hold that the declaration of homestead completely removes—or destroys—preexisting judgment liens, even as to any excess "equity" value above the statutory homestead amount. *Security Trust & Savings Bank v. McClure,* 29 Ariz. 325, 241 P. 515 (1925); *Union Oil Co. of Arizona v. Norton Morgan Commercial Co.,* 23 Ariz. 236, 202 P. 1077 (1922).

In response to this seemingly mandatory authority, the appellees argue that these cases have been rendered irrelevant by a 1928 amendment of the Arizona judgment lien statute. They claim that this amendment altered the purpose of the homestead exemption from that of protecting the real property underlying the homestead to preserving only the judgment debtor's homestead "interest" in that real property. This interest, they argue, is represented by the value limitation placed on the homestead by the Arizona homestead statutes, now $20,000. Since the debtors' equity in their residence clearly exceeds this limitation, the appellees maintain that there is no danger that the attachment of their liens will impair the debtors' "interest" in their homestead. Thus, the appellees claim that the purpose of Arizona's current judgment lien law will be served, notwithstanding the trial court's recognition of the validity of their judgment liens.

*The 1928 Amendment of Arizona's Judgment Lien Statute*

Prior to 1928, paragraph 3633 of the Arizona Civil Code of 1913 provided:

"From the time of its docketing ... a judgment becomes a lien for a period of five years from the date of its rendition upon all of the real property of the judgment debtor, except such as is or may be exempt from execution, *including homesteads,* in the county where the same is docketed ... Provided, that nothing herein contained shall prevent any person entitled thereto from declaring a homestead on real property as provided by law after. the lien herein provided from shall have attached to said real property and

from thereafter holding the same as a homestead free and clear of said lien." (Emphasis supplied.)

Based upon this statutory language, the *Union Oil* court held that the homestead not only removed judgment liens to the extent of the stated value limitation on the homestead, then $4,000, but also as to any value of the underlying real property in excess of that limitation. *Union Oil Co. of Arizona v. Norton Morgan Commercial Co., supra.* Relying upon the *Union Oil* reasoning, the Arizona Supreme Court held, some three years later, that the declaration of homestead "destroyed" already-existing judgment liens on the homesteaded real property. *Security Trust & Savings Bank v. McClure, supra,* 241 P. at 517.

Nevertheless, in 1928, in a move to simplify and remove ambiguities from the Arizona statutes, the Arizona Code Commissioner, F.C. Struckmeyer, made the following changes in the above-cited statute and recodified it at section 2017 of the 1928 Arizona Civil Code:

"From the time of its docketing, a judgment becomes a lien for a period of five years from the date of its rendition upon all the real property of the judgment debtor, except such as is or may be exempt from execution, *including the interest in the homestead,* in the county where the same is docketed ... Provided, any person entitled thereto may declare a homestead on real property as provided by law after such lien may have attached to said real property and may thereafter hold the *homestead interest* in the same free and clear of said lien." (Emphasis supplied.)

It is the position of the appellees that the *Union Oil* court only overcame its reluctance to set aside judgment liens on the excess above the homestead amount because the pre-1928 judgment lien statute clearly equated the homestead with the judgment debtor's underlying real property interest. Thus, at that time, the homestead protected *and constituted* the whole property interest of the judgment debtor, limited only by the ability of judgment creditors to

attack, on an *ad hoc* basis, any excess value of the underlying real property by a statutory appraisal and forced execution process. *See Union Oil Co. of Arizona v. Norton Morgan Commercial Co., supra,* 202 P. at 1079–80. Although the latter procedure remained the only statutory means of attacking an excess above the homestead amount, notwithstanding the 1928 Civil Code amendments, the appellees assert that the emphasis placed by the new judgment lien statute upon the "interest" of the judgment debtor in his homestead indicated that only the debtor's limited equity exemption was to be protected from the attachment of judgment liens by the homestead.

Under this line of reasoning, judgment liens could attach to the underlying real property, so long as they did not encroach upon the debtor's "homestead interest." In support of this viewpoint, the appellees cite language from the 1939 Arizona Supreme Court case of *Schreiber v. Hill,* 54 Ariz. 345, 95 P.2d 566 (1939), to the effect that the real exemption, granted by the homestead statute is the dollar amount stated, not the tract of land subject to the declaration. *See id.,* 95 P.2d at 568.

In rebuttal, the appellants observe that the commissioner placed in charge of making the 1928 Civil Code changes had not been empowered to alter the substance of existing legislation, but only to simplify and clarify the Arizona statutes. Laws of Arizona, ch. 35, § 3 (1925) (House Bill 229). It would, therefore, have been improper for him to have modified the entire scheme of the existing Arizona homestead exemption legislation, as it had been defined by that state's highest court. We agree with this position. We do not feel that the 1928 changes were intended to overturn the *Union Oil* and *McClure* decisions or to permit the attachment of judgment liens to excess equity above the homestead amount.

*The Statutory Homestead Value Versus Homesteaded Real Property*

The appellees are correct that the 1928 amendments do make it clear that the homestead was not to be equated with the underlying real property selected by a debt-

or. This concept, however, had already been acknowledged as one basis for the existing law in both the *Union Oil* and *McClure* cases. Both agreed that "the dominant idea [was] to save exempt to the family the amount of money therein designated as the value of a homestead," rather than any particular tract of land. *Union Oil Co. of Arizona v. Norton Morgan Commercial Co., supra,* 202 P. at 1079, *cited in Security Trust & Savings Bank v. McClure, supra,* 241 P. at 517. Indeed, until recently, the Arizona homestead could be declared against any tract of the debtor's real property, even vacant land. The protected land did not need to include his residence.

Because of this emphasis upon the debtor's equity "nest egg," it was intended that the homestead amount be preserved even with the voluntary sale of the covered property by the debtor. *See Schreiber v. Hill, supra,* 95 P.2d at 568; *Security Trust & Savings Bank v. McClure, supra,* 241 P. at 517; *Union Oil Co. of Arizona v. Norton Morgan Commercial Co., supra. Cf. Strahan v. Haynes,* 33 Ariz. 128, 262 P. 995 (1933) (the homestead does not prevent a prospective purchaser from obtaining specific performance under a land sales contract).

It is exactly this intention to protect the debtor's homestead equity which conflicts with the attachment of any judgment lien on homesteaded property, even where an excess equity may exist. A prospective buyer, upon discovering the existence of such liens and realizing that the judgment debtor cannot transfer his homestead rights, will pay the debtor a lesser sum for his homesteaded property, in proportion to the amount of the attached liens. In this way, the mere attachment of the lien may effectively preclude the judgment debtor from obtaining the full potential value of his homestead.

We believe that the Arizona judgment lien statute responded to this possibility by permitting the judgment debtor to sell his homesteaded property for its full equity value, should judgment creditors not succeed in reaching any excess above the

**334**

homestead amount, by the appraisal and forced execution method, prior to his sale. This point is supported by the post-1928 *Schreiber* case:

"It will be seen that we have consistently held that the real exemption given by our statute is the sum of $4,000 to protect the family, rather than the particular tract of land upon which they live as a home. Such being the case, and it being unquestioned that a declaration of homestead can be made at any time before an actual sale of the property, it would appear that the owners would have a right to make a declaration of homestead for the express purpose of passing a clear title to the property, for otherwise the intent of the law to preserve its value to them in money would be defeated, since they could not sell the property for its full value."

*Schreiber v. Hill, supra* 95 P.2d at 568. Although the *Schreiber* case did not deal with a situation in which the judgment debtors' equity was in excess of the homestead limitation, the Arizona Supreme Court makes clear in *Schreiber* that the judgment debtor may use his homestead exemption to obtain the "full value" thereof, by selling free and clear of liens. As is implied in the *Union Oil* holding, this ability would be lost if a judgment lien were to attach to even an unliquidated excess above the protected amount.

Looking to the above-cited language, we do not feel that the *Schreiber* opinion reflects any change in the Arizona homestead policies established in *Union Oil* and *McClure,* but, rather, that it follows the same line of reasoning set forth in those cases. (Indeed, immediately prior to making the above assessment, the *Schreiber* court cites favorably from the *Union Oil* and *McClure* opinions to support its decision.) As federal tribunals, neither we nor the court below may depart from this consistent exposition of Arizona law by that state's highest court.

### III. CONCLUSION

■ We hold that the trial court erred in concluding that the appellees' judgment

liens were validly attached to the debtors' residence. Under the Arizona judgment lien statute, Ariz.Civ.Code 33–964, these liens were removed by the filing of the Zakrzewskis' declaration of homestead and remained unattached at the time of the commencement of their Chapter 13 case.

REVERSED.