555 P.2d 662

**The STATE of Arizona, Appellee,**

**v.**

**Lee Allan PIERCE, Appellant.**

**No. 2 CA–CR 789.**

Court of Appeals of Arizona,
Division 2.

Aug. 11, 1976.

Rehearing Denied Sept. 8, 1976.
Petition for Review Denied Sept. 28, 1976.

**404**

Bruce E. Babbitt, Atty. Gen.; by William J. Schafer, III, and Shirley H. Frondorf, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender, by Kenneth J. Peasley, Asst. Public Defender, Tucson, for appellant.

## OPINION

HOWARD, Chief Judge.

Appellant was indicted on two counts of armed robbery. Count I alleged that on March 8, 1975, appellant robbed one Alexander Morales while armed with a gun. Count Two charged that on March 10, 1975, appellant robbed one Richard Murray while armed with a gun.

A pretrial motion to sever the counts was denied. Testimony was presented to the jury on October 17 and 18, 1975. The trial was recessed for the weekend and resumed on October 22nd. The court reporter who had taken the testimony on October 17th and 18th went on vacation that weekend and a new court reporter was present commencing October 22, 1975.

The jury began its deliberations at 11:30 a. m. on October 22, 1975, went to lunch and began deliberating again after lunch. At approximately 3:30 p. m. the jury requested a transcript of appellant's testimony. The court sent the jury a note asking if the jury had any specific questions. When the note was received the jury indicated it no longer needed the testimony. At approximately 5:45 p. m. the court called the jurors into the courtroom (with appellant and counsel present) and advised them that they could go back and deliberate longer at that time, they could go to dinner and return for further deliberations or he would permit them to go home and come back in the morning to resume their deliberations. The jury foreman advised the court that the jury probably needed to deliberate for quite a long period of time and upon inquiry of the jurors it was decided that they would come back the next morning. Prior to recessing the foreman repeated the request for a transcript of appellant's testimony. The court told the jurors that there was no transcript available and that the only way they could review the testimony was to have the court reporter read his notes to them. The jury indicated to the court that they would like to have the testimony read to them if it could be worked out with counsel and the reporter, since they felt it might help them in their deliberations.

The jury returned on the morning of October 23rd for further deliberations. The court was unable to locate the reporter who had left town on his vacation but did find another reporter who said she could read ninety-nine percent of the notes of the absent court reporter. The attorney for the state suggested that ninety-nine percent accuracy was sufficient and that if there was some doubt as to any of the words it could be resolved between the attorneys. The defense attorney refused to allow another reporter to read the notes unless that reporter could read them with one hundred percent accuracy. He requested that the court ask the jurors if

they could arrive at a decision without having the testimony read to them. The trial judge refused the defense attorney's request and instead sent a message to the jurors telling them that the testimony could not be read back to them since the court reporter was not available. Approximately five hours later the jury returned a guilty verdict on both counts.

On appeal appellant contends the court erred in the following respects: (1) by denying his motion to sever, (2) by giving in instruction on aiding and abetting, (3) by failing to instruct on the crime of being an accessory, (4) in instructing the jury on the voluntariness of appellant's statements to law enforcement officers, (5) in refusing to grant his motion for a mistrial when the court was unable to provide the jury with the testimony it had requested. Appellant also contends that the verdict was contrary to weight of the evidence.

The testimony shows that on March 8, 1975, Alexander Morales was working at the Quick Mart on South Twelfth Avenue, Tucson, Arizona. He stated that at about 7:00 to 7:30 p. m. a man came into the store, selected various grocery items, placed them on the counter and said he would be right back and left the store. Within a minute, two or more persons entered the store, one of whom was carrying a rifle. They demanded the money in the cash register and told Mr. Morales to put it in a paper bag. They took the money and the groceries which had been left on the counter and departed. Mr. Morales was unable to identify appellant as one of the three men in the store on March 8, 1975.

Richard Murray testified that on March 10, 1975, he was working at a U-Totem Market on the Nogales Highway. At approximately 11:45 p. m. a man entered the store placed a gun in Murray's face and told him he was being held up. He directed him to put the money in a brown paper bag which he then took and ran from the store. Murray was unable to identify appellant as the man who robbed him on March 10, 1975.

Prior to the robberies appellant resided with Donald Barnette, Anthony Sandoval and their girlfriends. Barnette, who at the time of the trial was serving time in the Arizona State Prison on four armed robbery charges, testified that he was the one who committed the Quick Mart robbery. Since he did not have a driver's license, appellant was driving the car and waited outside. He never told appellant what was going to happen and appellant never knew of any of the robberies until after they had taken place. Furthermore, he stated that appellant never received any money from the robberies. Barnette denied any involvement in the March 10th robbery.

Sandoval, who was also serving time at the Arizona State Prison for robbery at the time of trial, testified that he and Barnette were the ones who robbed the Quick Mart but that appellant knew nothing about it and was not involved in the plan. Sandoval also testified that he was the one involved in the U-Totem Market robbery and that although appellant drove him there, he knew nothing about the robbery before or immediately afterwards.

Appellant testified on his own behalf. He stated that Barnette drove the car to the Quick Mart on March 8, 1975 and he was asked if he would go into the store and get some groceries. He was told by Barnette and Sandoval that they had to discuss something for a moment and would be right in. He went into the store and when Barnette and Sandoval failed to appear appellant went outside to see where they were. He was told to seat himself in the car behind the wheel. Sandoval and Barnette then went into the store. When they returned a few minutes later, appellant started up the car and drove away.

Appellant also testified that on March 10th, he, Barnette and Sandoval all went to the U-Totem. Barnette and Sandoval went into the store while appellant waited in the car. A few minutes later they returned and appellant started the car and drove off.

Appellant stated that he had no knowledge at all about the robberies before or immediately afterwards.

Appellant's testimony as to lack of knowledge that the robberies were going to take place was impeached by a transcript of a taped statement made by him admitting he knew the robberies were going to happen prior to their taking place and that he participated in them.

At trial appellant stated that he just followed orders and that he was afraid of Barnette and Sandoval because they had guns.

Appellant claims that the offenses were joined only by virtue of Rule 13.3(a)(1), Rules of Criminal Procedure and that he was entitled under Rule 13.4(b) to severance as a matter of right.

■■■ Appellant made a motion to sever prior to trial on the ground that the crimes were unrelated and not part of a common scheme or plan. This motion was not renewed at or before the close of the evidence as required by Rule 13.4(c), Rules of Criminal Procedure. The failure to renew the motion constituted a waiver. *State v. Dale,* 113 Ariz. 212, 550 P.2d 83 (1976). Appellant's contention that the waiver provision of the rule violates the due process clause of the Fourteenth Amendment of the United States Constitution is without merit. A litigant's procedural defaults in state proceedings do not prevent vindication of his federal rights unless the state's insistence on compliance with its procedural rule serves a legitimate state interest. *Henry v. Mississippi,* 379 U.S. 443, 85 S. Ct. 564, 13 L.Ed.2d 408 (1965); *State v. Swafford,* 21 Ariz.App. 474, 520 P.2d 1151 (1974). We believe the rule does serve a legitimate purpose. It may not become clear until evidence has been introduced that the defendant is entitled to a severance. The rule is designed to prevent the defendant from playing "fast and loose" with the trial court. If he believes that prejudice has accrued from the joinder of the offenses, he must renew the motion to sever as the rule requires. This is not a novel state concept but is also a federal rule. *United States v. Porter,* 441 F.2d 1204 (8th Cir. 1971); *United States v. West,* 517 F.2d 483 (8th Cir. 1975). As was stated in *Williamson v. United States,* 310 F.2d 192, 197 (9th Cir. 1962):

"[Appellant's failure to renew the motion to sever] suggests that the prejudice now asserted to have resulted from the joinder may not have seemed so substantial to appellant in the context of [the] trial . . .."

■■■ Appellant contends the trial court erred in instructing on aiding and abetting since he was not formally charged as an aider and abettor in the indictment. He concedes that in *State v. Mendibles,* 25 Ariz.App. 392, 543 P.2d 1149 (1975) we rejected this argument. He now argues that under A.R.S. Sec. 13–140 one can only be an aider and abettor if he is not present at the scene of the crime. This argument is devoid of merit. A.R.S. Sec. 13–140 provides:

"All persons concerned in the commission of a crime whether they directly commit the act constituting the offense, or aid and abet in its commission, *though not present,* shall be prosecuted, tried and punished as principals, and no other facts need be alleged in any indictment or information against such a person than are required in an indictment or information against a principal." (Emphasis added)

Appellant points to the words "though not present" as sustaining his position. This is not correct. The statute means that one need not be present when the crime is committed in order to be an aider and abettor. It does not mean one must be absent from the scene of the crime in order to be an aider and abettor.

■■■ Equally without merit is appellant's claim that the court erred in not giving an accessory instruction. The offense of being an accessory is not a lesser included offense but a separate and distinct substantive crime. *State v. Woody,* 108

Ariz. 284, 496 P.2d 584 (1972). While the court can instruct on lesser included offenses if the evidence so merits, it cannot instruct on crimes not charged in the information.

■ Appellant claims the trial court erred in instructing the jury concerning the voluntariness of the statement he made to law enforcement officers. He objected below to the instruction on the ground that he did not contest the voluntary nature of the statement. For the first time on appeal appellant claims that the effect of giving the instruction was to suggest to the jury that he was denying making the statement and that this constituted a comment on the evidence in violation of A.R.S. Constitution Art. 6, Sec. 27. Having not objected on the grounds now urged, appellant would normally be precluded from raising the issue on appeal. Assuming arguendo that appellant is claiming fundamental error, we consider the question and find no error. The instruction did not suggest that appellant was denying having made the statement and did not constitute a comment on the evidence.

■ Appellant also contends the trial court erred in denying his motion for a mistrial when the court was unable to provide the requested testimony to the jury. Rule 22.3 of the Rules of Criminal Procedure provides:

"After the jurors have retired to consider their verdict, if they desire to have any testimony repeated, or if they or any party request additional instructions, the court *may* recall them to the courtroom and order the testimony read or give appropriate additional instructions. . . ." (Emphasis added)

The precursor of the foregoing rule was Rule 281 of the Rules of Criminal Procedure of Arizona, 17 A.R.S., which, although cast in mandatory terms was interpreted by us in *State v. Jones,* 6 Ariz.App. 26, 429 P.2d 518 (1967) as vesting discretion in the trial judge as to whether he will permit the jurors to have testimony repeated. Rule 22.3 of the Rules of Criminal Procedure now clearly makes the matter discretionary with the trial judge. This does not mean that there is unlimited power to choose arbitrarily. The word "discretion" excludes arbitrary or unreasonable acts. *Allen D. Shadron, Inc. v. Cole,* 101 Ariz. 122, 416 P.2d 555 (1966). It means a sound discretion and an abuse of discretion occurs when the decision is characterized by capriciousness or arbitrariness or by failure to conduct an adequate investigation into the facts necessary for an intelligent exercise thereof. *State v. Douglas,* 87 Ariz. 182, 349 P.2d 622 (1960).

■ The record demonstrates that the trial court did all in its power to secure the desired testimony for the jury. Appellant made no attempt whatsoever to consult with the court reporter who proposed to read the other reporter's notes and the state's attorney with a view to resolving those portions of the notes which she was not able to read. They might well have been able to jointly arrive at the correct language and the illegible parts of the notes could well have dealt with matters which were neither relevant nor material. Under these circumstances the trial court did not abuse its discretion in instructing the jury that it would have to arrive at its verdict without the requested testimony. We do not mean, in so holding, to condone the practice of allowing a court reporter to absent himself during the trial and deliberations of a jury. Under other circumstances this might well be prejudicial error.

Affirmed.

KRUCKER and HATHAWAY, JJ., concurring.