OPINION
YALE McFATE, Judge (Retired).
This is an appeal by plaintiff-appellant Grand Real Estate, Inc. from a judgment of the Maricopa County Superior Court in favor of defendants-appellees Sirignano. Additionally, appellees have cross-appealed asking that attorney’s fees be awarded them.
A review of the facts is necessary to determine the issues to be decided by this court. On December 20,1974, Ray Lumber Company (Ray Lumber) obtained a judgment against appellees/cross-appellants (Sirignano) in Maricopa County Superior Court Cause No. C-303008. The judgment was subsequently recorded on December 27, 1974, thus creating a judgment lien (with certain exceptions) on all property owned by Sirignano pursuant to A.R.S. § 33-964(A). The aforementioned judgment lien attached to the property which is the subject of this action. Subsequently a writ of general execution was issued and returned unsatisfied.
On April 16, 1975, Sirignano filed a homestead exemption on the subject property pursuant to A.R.S. § 33-1102. Subsequently, on April 12,1976, Sirignano filed a voluntary petition in bankruptcy with the United States District Court for Arizona. The Ray Lumber judgment was listed among the Sirignanos’ obligations. In addition to the Sirignano residence, which is the subject of this action, the Sirignanos possessed real property interests in two second contracts of sale, one with a balance due of $6,900, the other $5,000.
On May 17, 1976, the trustee in bankruptcy filed a report of exempt property, setting apart as a homestead the Sirignano residence, pursuant to A.R.S. §§ 33-1101-1103.
On June 14, 1976, Ray Lumber filed with the bankruptcy court a timely proof of claim in the sum of $12,756.49. Ray Lumber designated its claim as both secured and unsecured, attaching a copy of the transcript of the judgment docket. The Sirignanos were discharged by the bankruptcy court on June 28, 1976. On December 16, 1976, the trustee filed an objection to Ray Lumber’s designating its claim as both secured and unsecured, requesting that Ray Lumber segregate its claim. Ray Lumber filed a response to the trustee’s objection on January 17, 1977, again claiming to be both a secured and unsecured creditor. Ray Lumber asserted that if the Sirignanos owned any real property in Maricopa County on or after the date the judgment was recorded, it enjoyed the status of being both a secured and unsecured creditor; if not, it was merely an unsecured creditor. On April 7, 1977, Ray Lumber filed notice that it was reducing its claim to $8,756.49.
On September 15, 1977, the trustee allowed the reduction, but again objected to the status of Ray Lumber’s claim, indicat *11 ing that he would have no objection to allowing the entire claim as unsecured. No further correspondence regarding the status of Ray Lumber's claim appears in the record.
On September 21, 1977, Ray Lumber filed an assignment of judgment to the plaintiff-appellant, Grand Real Estate, Inc. (Grand). The assignment was made for the stated consideration of $1,500.
At the final meeting of creditors on October 28, 1977, the bankruptcy court failed to explicitly rule on the status of the Ray Lumber/Grand claim. The minutes of the meeting read as follows:
Trustee’s Objection to Claim ... No. 5 filed by Ray Lumber Company COURT: Claim allowed in the sum of $8756.49.
While the court did not explicitly state whether the claim was secured, unsecured, or both, a glance at the Minute Orders for the final meeting of creditors indicates that it was allowed as an unsecured claim. The order lists $645.47 to be distributed to “unsecured creditors” and nothing to “secured creditors”.
On November 12, 1977, the bankruptcy court entered an order for payment of dividends. Ray Lumber was issued a dividend check in the sum of $137.96 with the notation “first and final dividend — unsecured claim # 5”. Grand has received payment of the dividend.
On July 31, 1978, Grand began this action by filing a complaint seeking foreclosure on the Sirignano residence, pursuant to A.R.S. § 12-1635(B). The Sirignanos, in answering the complaint, alleged that the claim was discharged through bankruptcy. Additionally, appellees raised the defenses of waiver, estoppel and res judicata. The case was subsequently submitted to the court upon stipulation of the parties that the court decide the case on stipulated facts in the form of a Joint Pretrial Statement. On November 9, 1979, the court entered an order in favor of appellee Sirignano. Appellant subsequently moved the court for a new trial, which motion was denied by minute entry dated December 7, 1979. Appellees moved the court for an award of attorney’s fees, which motion was likewise denied by the court on December 7, 1979. Appellees assert on appeal that they are entitled to an award of attorney’s fees based upon a stipulation by the parties in the Joint Pretrial Statement submitted to the court.
Prior to deciding the issue of attorney’s fees, we will consider the issue of whether the judgment lien of Grand, upon the property exempted from bankruptcy, survived the bankruptcy proceeding permitting Grand to foreclose on the property.
In light of this court’s recent decision in Evans v. Young, 135 Ariz. 447, 661 P.2d 1148 (App.1983), we find it unnecessary to address the issues of waiver, estoppel or res judicata. There is no question that the subject property was properly homesteaded by the Sirignanos; in fact, the parties have so stipulated in their Joint Pretrial Statement:
D. The defendants homesteaded the property which is the subject of this action on April 16, 1975, one year prior to filing of the bankruptcy.
The issue presented to the court in Evans was whether a judgment lienholder may foreclose against homestead property without following the appraisal procedure enumerated in A.R.S. § 33-1105. In addressing that issue, the court discussed the relationship between the judgment lien statute, A.R.S. § 33-964, the foreclosure statute, A.R.S. § 12-1635(B)[1], and the homestead statutes, A.R.S. §§ 33-1101-1107. We feel that analysis is dispositive of the case at bar.
A.R.S. § 33-964 reads in pertinent part: A. Except as provided in §§ 33-729 and 33-730, from and after the time of recording as provided in § 33-961, a judgment shall become a lien for a period of five years from the date it is given, *12 upon all real property of the judgment debtor except real property exempt from execution, including the interest in the homestead, in the county where the judgment is recorded, whether the property is then owned by the judgment debtor or is later acquired.
B. Any person entitled thereto may declare a homestead on real property as provided by law after the lien has attached to the real property and may thereafter hold the homestead interest in the real property free and clear of the judgment lien. (Emphasis added)
The plaintiff in Evans claimed that the use of “homestead interest” rather than “homestead” indicated that only the statutorily fixed dollar amount of the homestead exemption was protected from execution and not the property itself. The court noted, however, that the language used in the homestead statutes (A.R.S. §§ 33-1101 to 1107) “consistently sujggests that ‘homestead’ is a unit of property not a severable dollar amount.” Evans, supra, 661 P.2d at pp. 1152. The Evans court further noted that its conclusion that the property itself was exempt was supported by numerous cases. See, e.g., Seaney v. Molling, 62 Ariz. 81, 153 P.2d 532 (1944) (assignee of all property not exempt from execution did not get title to homestead property even though declaration of homestead filed nearly five years after assignment); Schreiber v. Hill, 54 Ariz. 345, 95 P.2d 566 (1939) (property was exempt from execution even though declaration of homestead filed just before conveying property, apparently for express purpose of passing clear title to. the property); Wheeler Perry Co. v. Mortgage Bond Co., 41 Ariz. 247, 17 P.2d 331 (1932) (filing of homestead declaration freed property of prior judgment lien so that a subsequent mortgage executed by homesteaders had priority); Security Trust & Savings Bank v. McClure, 29 Ariz. 325, 241 P. 515 (1925) (judgment lien obtained prior to filing of homestead declaration did not revive on sale of homestead property to third party). See also, Union Oil Co. v. Norton-Morgan Commercial Co., 23 Ariz. 236, 202 P. 1077 (1922).
Having considered the applicable statutory and case law, this court, in Evans, concluded:
that a judgment lien does not attach to the excess value of the homestead and that a judgment creditor must first invoke the statutory appraisal procedure to reach the excess. (Emphasis added)
Evans, supra, 661 P.2d at p. 1153. The fact that the lien had attached prior to the homestead filing does not preserve any lien rights to amounts in excess of the homestead exemption. This is evident in reading A.R.S. § 33-1103, which provides:
A. The homestead, from the date of recording the claim, is exempt from attachment, execution and forced sale, and from sale under a judgment or lien existing prior to recording the claim, except:
1. A duly executed mortgage, deed of trust, or security agreement on the mobile home on which the homestead is filed.
2. A lien for labor or material that attached before the property was claimed as a homestead.
B. A sale as described in subsection A and not excepted by paragraphs 1 and 2 thereof made after the claim of homestead is recorded is invalid and does not convey an interest in the homestead, whether made under a judgment existing before or after recording of the claim. (Emphasis added)
Cf., Wheeler Perry Co. v. Mortgage Bond Co., supra; Security Trust & Savings Bank v. McClure, supra. It is clear that a judgment lien obtained pursuant to A.R.S. § 33-964 does not fall within the exceptions enunciated in A.R.S. § 33-1103.
Despite the fact that Ray Lumber’s judgment lien was recorded prior to the Sirignanos’ homestead filing, it was extinguished when the homestead exemption was properly filed. At that time the creditor could only proceed via the appraisal procedure as set forth in A.R.S. § 33-1105, if it sought to reach the excess value in the property over the amount of the *13 homestead exemption. Once the Sirignanos had properly filed their homestead exemption, Ray Lumber became relegated to the position of an unsecured creditor in regard to the subject property. It was incumbent upon Ray Lumber to institute the appraisal procedure in order to realize on any excess amounts above the homestead exemption. As we held in Evans, supra:
A judgment lien obtained pursuant to A.R.S. § 33-964 does not extend to property on which a homestead declaration has been filed____ If the value of the homestead property exceeds the value of the homestead exemptions over and above the liens and encumbrances within that narrowly defined category, the property is subject to execution pursuant to A.R.S. § 33-1105.
Evans, 661 P.2d at pp. 1154.
Grand, as assignee of Ray Lumber, can claim no greater rights than its assignor. St. Paul Fire & Marine Ins. Co. v. Allstate Ins. Co., 25 Ariz.App. 309, 543 P.2d 147 (1975); In re Estate of Pitt, 1 Ariz.App. 533, 405 P.2d 471 (1965). At the time the Sirignanos were adjudged bankrupt, the judgment was not a secured debt as against the subject property (Sirignano residence). The parties have stipulated in their Joint Pretrial Statement that the judgment (Cause No. C-303008) was listed among other obligations of the Sirignanos in the bankruptcy petition. The claim was allowed by the trustee as an unsecured claim and a dividend of $137.96 was received by Grand. The Sirignanos were released from personal liability when they were discharged; further enforcement of the judgment is barred.[2] See Lothman v. Lothman, 11 Ariz.App. 419, 464 P.2d 1006 (1970).
In conclusion, we hold that the judgment lien on the Sirignano residence was extinguished by the filing of the homestead exemption. The judgment was listed as an unsecured debt in the Sirignanos’ bankruptcy petition, the claim was allowed, and a dividend paid. Appellant is barred from any further enforcement of the judgment.
Appellees have cross-appealed claiming that they are entitled to an award of attorney’s fees.
The stipulation of the parties concerning the issue of attorney’s fees reads as follows:
L. This action arises out of contract and therefore the prevailing party is entitled to recovery of attorneys’ fees under A.R.S. § 12-341.01. Each party will file as an exhibit a statement of hours expended in this case to date.
The effect of this stipulation was to settle the issue of whether the case arose out of contract, thereby permitting the court to apply the provisions of A.R.S. § 12-341.01. The stipulation specifically states that A.R.S. § 12-341.01 is applicable to this case. Rather than settling the issue of attorney’s fees themselves, the parties elected to have the provisions of the statute govern.
A.R.S. § 12-341.01 provides in pertinent part:
A. In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney's fees. This section shall in no manner be construed as altering, prohibiting or restricting present or future contracts or statutes that may provide for attorney’s fees.
B. The award of reasonable attorney’s fees awarded pursuant to subsection A should be made to mitigate the *14 burden of the expense of litigation to establish a just claim or a just defense. It need not equal or relate to the attorney’s fees actually paid or contracted, but such award may not exceed the amount paid or agreed to be paid.
As this court observed in Associated Indemnity Corp. v. Warner, 1 CA-CIV 6011 (filed July 28, 1983):
Because the statute provides that an award of fees “should be made to mitigate the burden” of litigation, the clear intent of the statute is that under ordinary circumstances the successful party in an action which falls under the statute is entitled to recover his reasonable attorney’s fees.
Id. at p. 7. However, subsection A provides that the court may award attorney’s fees to the prevailing party. The language is permissive, leaving the awarding of attorney’s fees to the court’s discretion. Authenreith v. Norville, 127 Ariz. 442, 622 P.2d 1 (1980); Earven v. Smith, 127 Ariz. 354, 621 P.2d 41 (App.1980). We will not substitute our discretion for that of the trial court if there is a reasonable basis in the record to sustain the exercise of that discretion. Associated Indemnity Corp. v. Warner, supra. See also Catalina Foothills Association v. White, 132 Ariz. 427, 646 P.2d 312 (App.1982).
As this court noted in Associated Indemnity, there are various factors that might influence a trial court in deciding upon the appropriateness of awarding the prevailing party his attorney’s fees. Among them are the following:
1. The merits of the claim or defense presented by the unsuccessful party.
2. The litigation could have been avoided or settled and the successful party’s efforts were completely superfluous in achieving the result.
3. Assessing fees against the unsuccessful party would cause an extreme hardship.
4. The successful party did not prevail with respect to all of the relief sought.
Associated Indemnity Corp. v. Warner, supra, at p. 8. See generally Note, Statutory Attorney’s Fees in Arizona: An Analysis of A.R.S. Section 12-341.01, 24 Ariz.L. Rev. 659, 678-80 (1982).
The record before this court is devoid of reference to any of the possible underlying reasons for the trial court’s denial of the Sirignanos’ motion for an award of attorney’s fees. As we noted in Associated Indemnity:
Although the statute does not require that the trial judge enumerate his reasons for denying or reducing a fee award, the better practice would be for the trial judge to state on the record the factors and the reasons which were taken into account in denying or reducing the fee request.
Associated Indemnity Corp. v. Warner, supra, at p. 8.
By their stipulation the parties agreed to submit the issue of attorney’s fees to the court under A.R.S. § 12-341.01 and agreed to supplement the record by filing their respective statements showing hours of work expended on the case. The cross-appellant (the prevailing party) filed such a statement. While the allowance or disallowance of fees under the statute is discretionary, such discretion must be a legal as opposed to an arbitrary one. Re Paul Welisch, 18 Ariz. 517, 163 P. 264 (1917); State v. Pierce, 27 Ariz.App. 403, 555 P.2d 662 (1976).
In the posture of this case, the court was required to exercise its discretion based on the stipulation, the statute, the facts and circumstances shown by the record, and any other applicable law. It would be improper to deny attorney’s fees to the prevailing party for no reason at all, or simply because the court chose to ignore the statute or the issue presented. In order to sustain a denial of fees under the circumstances of this case, the record must disclose some reasonable factual justification for the denial. This is but an application of the general rule that while, absent a request for findings of fact, a trial judge is not required to set forth the underlying *15 factual basis for his ultimate decision, Porter v. Porter, 67 Ariz. 273, 195 P.2d 132 (1948); Ellingson v. Fuller, 20 Ariz.App. 456, 513 P.2d 1339 (1973), nevertheless, the judgment of a trial court must find some reasonable support from the evidence or lack of evidence. Neal v. Neal, 116 Ariz. 590, 570 P.2d 758 (1977); Porter, supra; Hueg v. Sunburst Farms (Glendale) Mutual Water and Agricultural Co., 122 Ariz. 284, 594 P.2d 538 (App.1979); Ellingson, supra.
Possibly the trial court concluded that the plaintiff’s claim was so meritorious that, even though defendant prevailed, there was no reason to apply the statute so as to mitigate his financial burden caused by the plaintiff’s suit. Of course, we have no hint as to the basis of the court’s disallowance of fees. While plaintiff’s claim was assuredly not frivolous, and presented arguable issues, nevertheless under the then current Arizona statutes and decisions the applicable law was not abstruse. (See Evans, supra.) To a court fully informed as to the facts and the law, it should have been apparent that the claim was untenable and lacked that degree of merit which would justify withholding attorney’s fees to the prevailing party. Hence, if the trial court based its decision solely on the relative merits of plaintiff’s claim and defendant’s defense, denial of attorney’s fees was not justified.
Based on the foregoing we conclude that the trial court either abused or failed to exercise the required judicial discretion in denying the Sirignanos’ request for an award of their attorney’s fees.
The judgment entered in favor of the appellees is affirmed. The judgment denying attorney’s fees is vacated. The case is remanded to the trial court for consideration of appellees’ request for attorney’s fees. Upon remand, the trial court may hold an evidentiary hearing for that purpose. Attorney’s fees in the amount of $2,226.00 should be awarded the Sirignanos, unless the trial court, in the exercise of its discretion and in accordance with this opinion, determines to reduce or deny the attorney’s fee request.

. A.R.S. § 12-1635(B) provides:
The execution creditors may also proceed against defendant therein and other parties, by original complaint, to obtain satisfaction of their executions after they have been returned unsatisfied in whole or in part.

. Since the bankruptcy proceeding took place prior to enactment of the 1978 bankruptcy code, the effect of the bankruptcy proceeding is governed by the provisions of the 1898 Act. Under the Act, discharge neither destroyed the debt nor supplanted the moral obligation of the debt- or to pay it. The discharge merely served as a bar to the enforcement of the discharged debt. However, recent 1898 Act case authority has held that even under the Act, discharge of the debt is more than a mere bar to remedy and the claim of the- creditor is extinguished. 9 Am. Jur.2d Bankruptcy § 778 (1980). Either position bars enforcement of the judgment in the case at bar.