[Civil No. 1878.   Filed January 4, 1922.]

[202 Pac. 1077.]

# UNION OIL COMPANY OF ARIZONA, a Corporation, Appellant, v. NORTON-MORGAN COMMERCIAL COMPANY, a Corporation, MICHAEL OHL, JAMES SCOW and KATHERINE COMSTOCK, Appellees.

1. PUBLIC LANDS — PATENT FROM STATE TO ASSIGNEE IS SUBJECT TO LIENS AGAINST ASSIGNOR.—Where a patent was issued by the state, directed to the assignee, but the latter's rights were secured through and by virtue of the state's contract with the assignor, the property under the state patents would be subject to any valid liens existing against the interest of the assignor.

2. PUBLIC LANDS—INTEREST OF PURCHASER FROM STATE IS SUBJECT TO JUDGMENT LIEN.—Under Land Code (Laws 1915, 2d Sp. Sess., c. 5), sections 59–69, giving a purchaser from the state property rights that are inheritable and assignable, and Civil Code of 1913, paragraph 5552, subdivision 5, defining any inheritable interest in land as real property, the interest of a purchaser of state lands under his contract of purchase before patent is subject to the lien of docketed judgments created by Civil Code of 1913, paragraph 3633.

3. PUBLIC LANDS—PROHIBITION AGAINST MORTGAGE DOES NOT APPLY TO INTEREST OF PURCHASER.—The prohibition of Constitution, article 10, section 3, against encumbrance of the state lands, which was a recognition of the contract between the state and the government contained in Enabling Act, section 28, does not prevent the mortgage or encumbrance of the interest of the purchaser of state lands under his contract of purchase.

4. HOMESTEAD—PURPOSE IS TO PROTECT LAND OF DESIGNATED VALUE.— In view of Civil Code of 1913, paragraphs 3295, 3633, the purpose of the homestead act (Civ. Code 1913, pars. 3288–3301), paragraph 3288 of which gives a homestead of real property not to exceed in value the sum of $4,000, was to protect for the family a piece of land of that value, or a sum of money of that amount.

5. HOMESTEAD—JUDGMENT LIEN DOES NOT ATTACH ON EXCESS VALUE. In view of fact that Civil Code of 1913, paragraph 3295, designating the method for setting aside a homestead from land exceeding the specified value, refers only to proceedings between the creditors and the homestead claimant, and that the homestead act (Civ. Code 1913, pars. 3288–3301), uses the words "real property," "land

claimed," and "homestead" interchangeably, a judgment lien, created by paragraph 3633, which contains a proviso that it shall not prevent a person from declaring a homestead on real property and from holding the same free and clear of the lien, does not attach to the excess value of a homestead, so that purchasers of the homestead, after the judgment has been docketed, take it free of the judgment lien.

6. HOMESTEAD—IS CREATURE OF STATUTE.—There was no homestead nor any judgment lien under the common law, but both are creatures of the statute, and the statutes alone, therefore, must determine whether the lien attaches to the homestead in excess of the designated value.

APPEAL from a judgment of the Superior Court of the County of Maricopa. R. C. Stanford, Judge. Judgment reversed and cause remanded, with directions.

Messrs. Armstrong, Lewis & Kramer, Mr. I. J. Lipsohn, and Mr. J. Early Craig, for Appellant.

Messrs. Cox & Moore and Mr. L. J. Cox, for Appellees.

ROSS, C. J.—This is an action to quiet title to 4.02 acres of land, a part of the E. ½ of the S. E. ¼ of section 36, township 2 north, range 2 east, Maricopa county, Arizona, brought by the Union Oil Company against the Norton-Morgan Commercial Company, Michael Ohl, James Scow, and Katherine Comstock. Comstock defaulted, and Michael Ohl filed a disclaimer, and the plaintiff had judgment quieting its title as against these two defendants. Defendant Scow confesses that the court erred in holding that he had a lien upon plaintiff's premises, and judgment must be reversed as to him. This leaves the contestants here the Union Oil Company, plaintiff, against the Norton-Morgan Commercial Company, defendant. The facts are stipulated, and those material to a decision of the case are as follows:

July 14, 1917, one A. Starkweather, being theretofore the lessee thereof from the state, entered into a contract with the state land department to purchase from the state the said E. ½ of the S. E. ¼ of section 36, and received from the state land department certificate of purchase No. 1222 in terms as provided in section 62 of the Land Code (2d Sp. Sess., 2d Leg., p. 37). Thereafter, on November 15, 1917, Starkweather secured, as his contract with the state required him to do, a water right in the Salt River project. On December 20, 1917, Starkweather filed a homestead declaration on said subdivision, in which he stated the value of same as $13,670.10, being the aggregate he had promised to pay for land and water, and that he had made a payment on account of the purchase price of the land in the sum of $335.10. The defendants, Norton-Morgan Commercial Company, and Ohl, having theretofore obtained judgment foreclosing attachment liens on said subdivision against Starkweather in the superior court of Maricopa county, on February 28, 1918, caused said judgments to be docketed in the office of the clerk of the court. Thereafter, on December 18, 1918, Starkweather assigned his certificate No. 1222 with the approval of the state land department to A. E. Sherid, his son-in-law, and Lila Sherid, his daughter, for the recited consideration of $4,000. On June 2, 1919, and by virtue of an order of sale issued on the Ohl judgment and levied on said premises, the same was offered for sale and sold to Norton-Morgan Commercial Company for $1,386.16, to whom the sheriff thereupon delivered a certificate of sale. That thereafter, on July 5, 1919, the Sherids assigned to the Union Oil Company, plaintiff, with the consent of the state land department, a right to 4.02 acres from their certificate for the consideration of $4,000, with the understanding that patent should issue directly to the Union Oil Company,

which was done before the institution of this suit by the said company. It was also found that Stark-weather and wife had, before assigning his contract of purchase, and before judgments were docketed or declaration of homestead filed, given mortgages upon the E. ½ of the S. E. ¼ of section 36 in the sum of $5,716.

The court's conclusions of law were that by reason of execution sale of said premises under the Ohl judgment, at which the Norton-Morgan Commercial Company was the purchaser, the said purchaser became subrogated to the rights of said Ohl, and has a valid and subsisting lien against said 4.02 acres in the amount of the Ohl judgment, to wit, $1,386.16; that said Norton-Morgan Commercial Company, on account of its own judgment for $975.42, has a valid and subsisting lien against 4.02 acres.

The court decreed, first, "that the defendant, Norton-Morgan Commercial Company, as purchaser at the execution sale in the case of *Michael Ohl* v. *A. Starkweather,* has a valid and subsisting lien in the sum of $1,386.16" on said 4.02 acres; second, "that the Norton-Morgan Commercial Company, under its attachment and judgment lien in the cause of *Norton-Morgan Commercial Company* v. *A. Starkweather* has a valid and subsisting lien against the above-described property" in the sum of $975.42. The plaintiff has appealed from said judgment.

It is the contention of plaintiff that it obtained a good title, free from all liens and encumbrances, to the 4.02 acres bought of the state when the latter issued to it a patent therefor. If the transaction had been between the plaintiff and the state only, without the intervention of Starkweather and his assignees, the Sherids, this contention would be right. While the patent was issued directly to plaintiff, still the record incontestibly shows that it was all done with

direct relation to the original contract of sale with Starkweather, and that whatever rights the Sherids or plaintiff had or obtained in said premises, were secured through and by virtue of the Starkweather contract. So if defendants secured liens by attachment or judgment upon premises while the contract to purchase stood in Starkweather's name, those taking under Starkweather would take, subject to such liens.

We think, also, contrary to plaintiff's contention, that the Starkweather interest in premises under his contract, unless exempt by reason of his homestead claim, was subject to attachment, execution, and forced sale and to judgment lien. From an examination of the law, sections 59–69, Land Code, it will be seen that the state recognizes that the contract purchaser has secured valuable property rights—rights that are inheritable and assignable. Our statute (paragraph 1363, Civ. Code) makes all property, real, personal, and mixed, liable to execution. Subdivision 5, paragraph 5552, Civil Code, defines any inheritable interest in land as real property. The Land Code makes the interest of the contract purchaser inheritable and assignable. Sections 63 and 69. Speaking of a right somewhat similar, to wit, the right of the locator of a mining claim, the Supreme Court of the United States, in *Bradford* v. *Morrison,* 212 U. S. 389, 53 L. Ed. 654, 29 Sup. Ct. Rep. 349 (see, also, Rose's U. S. Notes), quoting from *Forbes* v. *Gracey,* 94 U. S. 762, 24 L. Ed. 313, said:

"This claim may be sold, transferred, mortgaged, and inherited, without infringing the title of the United States."

Paragraph 3633, Civil Code, makes docketed judgments liens on all real property of judgment debtors except homesteads.

It is also contended by the plaintiff that to permit the interest of Starkweather to be encumbered by

judgment or other liens would defeat the prohibition of the Constitution of the state of Arizona found in section 3 of article 10, which reads as follows:

"No mortgage or other encumbrance of the said [state] lands, or any part thereof shall be valid in favor of any person or for any purpose or under any circumstances whatsoever."

We agree with defendant that this provision is a limitation upon the power of the state to mortgage or encumber its lands, and not a limitation upon the power of the contract purchaser from the state to mortgage or encumber his interest in such lands. Enabling Act, section 28, confirming former grants to the territory and making others to the state, declares that state lands shall be held in trust by the state for the purposes and uses therein named, and places certain restraints upon the disposition thereof, and, among other provisions, used the language of section 3 of article 10 of the Constitution quoted above. This inhibition in the Enabling Act was against the grantee of the United States. This seems too plain for discussion. The same inhibition was carried forward into the Constitution as section 3, article 10, and is a recognition by the state in its fundamental law of one of the conditions under which it accepted the grant of state lands. The limitation is not directed against the contract purchaser. Paraphrasing in part, "he may sell, transfer or mortgage the same and it may pass by inheritance, without infringing the title of the state of Arizona." It is quite clear that any mortgage or encumbrance upon the title of the state in any of its grant lands would be void because in conflict with the prohibition contained in section 3, article 10, *supra,* but it is equally clear that this provision was never intended to limit or restrict the freedom of the purchaser to sell, mortgage, or encumber his interest in lands contracted from the state.

23 Ariz.—16

The next contention of the plaintiff is that the subdivision of land, out of which the 4.02 acres in question was carved, was the homestead of Starkweather, and that no judgment or attachment lien under the statute did or could attach thereto. The determination of this question we have found to be quite difficult. We think the courts all agree that if the homestead claimed corresponds in value and quantity to the homestead allowed by law no lien will attach. It is when there is an excess in value or quantity over and above that allowed by law for a homestead that has occasioned a divergence in the decisions of the courts, some of them holding that the lien does attach to the excess, and others holding to the contrary. This difference in conclusions of the courts is said to be based upon a difference in the statutes. 13 R. C. L. 619, § 78. In most of the states there is a limit upon what may be claimed as a homestead. It is usually fixed in quantity and value, and when the homestead claim coincides in value and quantity with the statutory allowance it is exempt from attachment, execution, and forced sale, and in such case no judgment lien will attach to the homestead.

The Arizona homestead is of real property, "not to exceed in value the sum of $4,000.00." Paragraph 3288, Civ. Code. This may be selected by the head of the family at any time before sale. It is expressly provided that the declaration of homestead may be filed and defeat a judgment lien already against the real estate claimed as homestead. Paragraph 3633, Civ. Code. We think the dominant idea under our law is to save exempt to the family the amount of money therein designated as the value of a homestead. This is evident because the homestead is not necessarily the dwelling-house or home of the family. It may be of unimproved real property, with no limit upon its quantity except as fixed by its value, and

should it be sold in the manner provided by paraphaph 3295 of the Civil Code, the officer, out of the proceeds arising therefrom, is first required to pay to the homesteader "the sum of $4,000, which shall be protected from all legal process." When our homestead act (chapter 1, title 20, Civ. Code) is read in connection with the statute providing for judgment liens, paragraph 3633, Civil Code, the conclusion seems inevitable that the purpose and intent of the legislature was to protect for the family a piece of land or real estate not to exceed in value $4,000 from attachment, execution, and forced sale, as also from any judgment lien. To that value the homestead shall be free and clear of all liens, even those attaching before the declaration of homestead.

But what is to be said of any excess? Does the filing of the homestead declaration protect the excess, if there be such, from judgment and attachment liens? The answer to this question, we think, must be found in the statutes. The manner and method of ascertaining whether the real property claimed as homestead exceeds in value the sum of $4,000 is explicitly pointed out in paragraph 3295 of the Civil Code. The defendant having first designated his homestead and stated its value, the plaintiff is authorized, if he be dissatisfied with the value of the land claimed, to initiate proceedings to have it appraised. If the appraisers find the land value does not exceed $4,000 over and above all liens and encumbrances thereon "the land so selected and claimed shall not be subject to execution and forced sale." If the value is found to exceed $4,000 over and above all claims and encumbrances thereon, and the same can be divided without material injury, the homestead shall be set off in a compact form to the defendant, "and the residue of the land claimed shall be subject to be sold under execution, as in other cases." If the value of the land exceeds

$4,000 over and above all liens and encumbrances, and it cannot be divided without material injury, it is made the duty of the officer to sell all of the land claimed, paying over to the defendant homesteader, out of the proceeds arising therefrom, $4,000, and the residue, or so much thereof as may be necessary, is to be applied in satisfaction of execution. No offer for less than $4,000 can be accepted.

This method of determining whether there is an excess value in the land claimed as homestead would apply and have to be pursued whether the lien of an attachment or judgment attached to the excess or not. It is the only method provided by law to reach any excess. It is a proceeding that must take place between the judgment creditor and the judgment debtor while the latter is occupying the land claimed as his homestead. The statute does not provide a method of determining whether the land claimed as a homestead was excessive in value or not after the same has been deeded or disposed of by the homesteader. This would seem to negative an intention upon the part of the legislature to allow or permit a judgment lien or an attachment lien to be established against the homestead claim. Had the legislature intended to permit the homestead to be encumbered by judgment liens running five years from the rendition of the judgment, they doubtless would have made the method of ascertaining the homestead value as between the plaintiff and defendant applicable to the grantees of the defendant.

In *Wuicich* v. *Solomon-Wickersham Co.*, 18 Ariz. 164, 157 Pac. 972, the question was as to the right of the head of a family to select a homestead out of a partnership real property, and we there said, "The exemption is of real property." Reading the homestead act (chapter 1, title 20, Civ. Code) through, it appears that the words "real property," "land

claimed,'' and ''homestead'' are used interchangeably or as correlatives.   Paragraph 3288 says:

''Every person who is the head of a family . . . may hold as a homestead . . . real property to be selected by him.''

Paragraph 3289 provides that in his declaration of homestead he shall describe ''the land claimed.'' Paragraph 3295 repeatedly speaks of the ''land claimed.''   Paragraph 3301 preserves ''any mortgage or lien for labor or material that may have attached to land before such land was claimed as a homestead.''   Paragraph 3292 exempts the homestead from attachment, execution, and forced sale, and from sale under any judgment or lien existing prior to the recording of such claim (except a mortgage executed by husband and wife), and makes a sale under such judgment or lien invalid.   The statute, paragraph 3633, Civil Code, providing for judgment liens, reads as follows:

''From the time of its docketing . . . a judgment becomes a lien for a period of five years from the date of its rendition upon all the real property of the judgment debtor, except such as is or may be exempt from execution, including homesteads: . . . Provided, that nothing herein contained shall prevent any person entitled thereto from declaring a homestead on real property as provided by law after the lien herein provided for shall have attached to said real property and from thereafter holding the same as a homestead free and clear of said lien.''

We think when the enacting clause and the proviso in this paragraph are read together the clear intent and meaning is manifest that no lien shall be permitted to attach to the real property claimed as a homestead, or if one has attached it shall not remain a lien upon the filing of the homestead declaration.   It will be noted that the exemption from lien is the real

property claimed as a homestead. Nothing shall prevent "any person entitled thereto from declaring a homestead on real property as provided by law . . . and from thereafter holding the same [real property] as a homestead free and clear of said lien." It is not possible in the face of such language, unless we ignore its import, and enter into the domain of legislation, to hold the judgment lien attached to the property involved, upon the docketing of the judgment against Starkweather. As is said in 13 R. C. L. 619, section 78:

"There is a decided conflict in the authorities on the question whether a judgment becomes a lien upon the debtor's homestead as to the excess thereof above the statutory limit of value. The question in each jurisdiction depends largely upon the construction to be given to the particular statutes therein relating to homestead rights and to those relating to the lien of judgments."

There was no homestead, nor was there any judgment lien, under the common law. Both of these are creatures of the statute. It is to the statutes, therefore, that we must look, and by them be guided. If we were declaring policies, or if we were vested with the power to do so, our inclination would be to follow that line of decisions that have held the excess of the homestead above the statutory limit subject to the lien of an attachment and judgment. Or if the language of our statute was doubtful, and permitted a construction, we would be inclined to follow those decisions. An examination of the cases holding to this view will disclose that the statutes of the particular states were radically different from ours. We cite some of the cases: *White* v. *Spencer,* 217 Mo. 242, 129 Am. St. Rep. 547, 16 Ann. Cas. 598, and annotations, 117 S. W. 20; *Vanstory* v. *Thornton,* 112 N. C. 196, 34 Am. St. Rep. 483, 17 S. E. 566; *Harrison* v. *First*

*Nat. Bank* (Tex. Civ. App.), 224 S. W. 269; 13 R. C. L. 619, § 78. .The courts holding a contrary view base their decision upon their statutes, and among them are California, Washington, Montana and Utah, from which states we cite the following cases: *Lubbock* v. *McMann,* 82 Cal. 226, 16 Am. St. Rep. 108, 22 Pac. 1145; *Sanders* v. *Russell,* 86 Cal. 119, 21 Am. St. Rep. 26, 24 Pac. 852; *Traders' Nat. Bank* v. *Schorr,* 20 Wash. 1, 72 Am. St. Rep. 17, 54 Pac. 543; *Vincent* v. *Vineyard,* 24 Mont. 207, 81 Am. St. Rep. 423, 61 Pac. 131; *Antelope Shearing Corral* v. *Consolidated Machine Co.,* 54 Utah, 355, 180 Pac. 597.

If the judgment creditors of Starkweather were dissatisfied with the valuation of the land claimed by him as a homestead, they should have caused the levy of an execution thereon, and then invoked the procedure provided in paragraph 3295 of the Civil Code to determine whether there was an excess of value or not. Quoting the Supreme Court of California in *Lean* v. *Givens,* 146 Cal. 739, 106 Am. St. Rep. 79, 81 Pac. 128:

"We conclude that by this levy a lien is imposed on the property conditionally, to become absolute in the event that it is determined in the proceeding that an excess exists, and that a purchaser after the levy takes subject to the lien."

The judgment of the lower court is reversed and the cause remanded, with directions that judgment be entered in favor of the plaintiff, quieting its title to the 4.02 acres as against the defendants, Norton-Morgan Commercial Company, and James Scow.

McALISTER and FLANIGAN, JJ., concur.