CRUZ, Judge:
¶1 Pacific Western Bank and Coastline Re Holdings Corp. (collectively, "PWB") appeal from the superior court's entry of a preliminary injunction enjoining the sale of a home owned by the Castleton Revocable Trust (the "Castleton Trust"). Because a judgment creditor may not attach a judgment lien to homestead property, but instead may execute on its judgment only by way of a forced sale of the property under Arizona Revised Statutes ("A.R.S.") § 33-1105, we affirm the superior court's preliminary injunction.
FACTS AND PROCEDURAL HISTORY
¶2 In 2002, Berislav and Djurdjica Sepic purchased a home in Mesa (the "Home") to use as their primary residence. In 2007, they borrowed $937,500 from Washington Mutual Bank, secured by a deed of trust on the Home. The deed of trust was later assigned to Chase Bank.
¶3 In a separate transaction, the Sepics borrowed money to purchase an apartment complex in Phoenix. That loan was later assigned to PWB. After the Sepics stopped *1189 paying on the apartment loan, PWB sued them for breach of contract and obtained a default judgment for $5.2 million (the "Judgment"). PWB recorded the Judgment in 2011, then timely renewed it.
¶4 After losing their apartment complex to foreclosure, the Sepics defaulted on the loan secured by their Home. At their request, Chase approved a short sale of the Home. As part of the short sale process, the Sepics conveyed the Home to the Fairbrook Revocable Family Trust ("Fairbrook Trust"). A few weeks later, in February 2013, the Fairbrook Trust sold the Home to the Castleton Trust for $535,000.[1] Meanwhile, the Judgment remained unpaid.
¶5 More than three years after the sale, PWB sued the Castleton Trust, seeking declaratory relief and to quiet title, asserting that the Judgment remained an enforceable lien against the Home.[2] PWB obtained a writ of general execution, and the Maricopa County Sheriff noticed a sale of the Home. The Castleton Trust then moved to enjoin the sale.
¶6 Following an evidentiary hearing, the superior court entered findings of fact and conclusions of law and a preliminary injunction enjoining the sale. PWB timely appeals, and we have jurisdiction pursuant A.R.S. § 12-2101(A)(5)(b).
DISCUSSION
¶7 Because the grant of a preliminary injunction rests within the sound discretion of the superior court, we review its decision for an abuse of discretion. See Fin. Assocs., Inc. v. Hub Properties, Inc. , 143 Ariz. 543, 545, 694 P.2d 831 (App. 1984). This appeal, however, requires us to analyze the intersection of Arizona's judgment lien and homestead statutes. See A.R.S. §§ 33-961 -964 (judgment liens on real property), 33-1101 to -1105 (homesteads and homestead exemption). We review this question of law de novo . See Rogone v. Correia , 236 Ariz. 43, 49, ¶ 17, 335 P.3d 1122 (App. 2014). We construe the homestead statutes liberally, giving effect to their purpose, which is to protect Arizona homeowners from the forced sale of their homes. Id. (citation omitted).
¶8 Pursuant to the judgment lien statutes, a recorded judgment becomes a lien on all real property owned by the judgment debtor, A.R.S. § 33-961(A), unless the property is "exempt from execution, including homestead property." A.R.S. § 33-964(A). Pursuant to the homestead statutes, an individual or a married couple may claim a homestead exemption in their personal residence of up to $150,000 in equity, which is "exempt from attachment, execution and forced sale." A.R.S. § 33-1101(A). Any person entitled to a homestead exemption "holds the homestead property free and clear of the judgment lien." A.R.S. § 33-964(B).
¶9 On appeal, we must decide whether the Sepics' homestead exemption prevented the Judgment from attaching as a lien against the Home, and, if so, whether the Sepics abandoned their homestead exemption before they transferred title to the Home.
I. Attachment of the Judgment Lien
¶10 PWB first argues the superior court erred by determining that the Judgment lien did not attach to the Home or to the proceeds of the sale of the Home.
¶11 Addressing the interplay of judgment liens and the homestead exemption, § 33-964 provides in relevant part:
Except as provided in § 33-1103, a recorded judgment shall not become a lien on any homestead property. Any person entitled to a homestead on real property as provided by law holds the homestead property free and clear of the judgment lien.
A.R.S. § 33-964(B) (emphasis added); see A.R.S. § 33-964(A) (a judgment "shall become a lien ... on all real property of the judgment debtor except real property exempt *1190 from execution, including homestead property"). Section 33-964 thus establishes the general rule that a recorded judgment does not become a lien on homestead property. See also Union Oil Co. of Ariz. v. Norton Morgan Commercial Co ., 23 Ariz. 236, 245, 202 P. 1077 (1922) (holding that "no lien shall be permitted to attach to the real property claimed as a homestead"). As the statute states expressly, individuals hold their "homestead property free and clear" of any judgment liens. See A.R.S. § 33-964(B).
¶12 In Evans v. Young , we held that a judgment creditor may reach excess equity in a homestead property only by invoking § 33-1105, which allows a forced sale of property to a bidder whose offer exceeds the sum of the homestead exemption plus the value of any consensual liens on the property having priority to the judgment. 135 Ariz. 447, 453, 661 P.2d 1148 (App. 1983).[3] Likewise, in Grand Real Estate, Inc. v. Sirignano , this court held that a judgment creditor must follow the procedure in § 33-1105"in order to realize on any excess amounts above the homestead exemption." 139 Ariz. 8, 13, 676 P.2d 642 (App. 1983) ; see also In re Rand , 400 B.R. 749 (Bankr. D. Ariz. 2008) (clarifying that a recorded judgment does not create a lien on property subject to homestead even when the value of the property exceeds the amount of the homestead); In re Glaze , 169 B.R. 956, 966 (Bankr. D. Ariz. 1994) (explaining that § 33-1105 sets forth the procedure for ensuring that excess equity is distributed to judgment lien creditors).
¶13 PWB argues that this general rule does not apply here because the introductory phrase of § 33-964(B) -"[e]xcept as provided in § 33-1103"-creates an exception that allowed its Judgment lien to attach to the Home. Specifically, PWB relies upon § 33-1103(A)(4), which provides that homestead property is not exempt "[t]o the extent that a judgment or other lien may be satisfied from the equity of the debtor exceeding the homestead exemption." A.R.S. § 33-1103(A)(4). These provisions were added to the statutes after our Evans decision, but they do not change the outcome. As the bankruptcy court carefully explained in Rand , "It remains the case that both the homestead statute and the judgment lien statute both conceive of the 'homestead' as being the real property, not the equity value of such real property." 400 B.R. at 754. Just as before the amendments, "[a] judgment creditor who suspects there is excess equity in a debtor's homestead can still protect itself by forcing an execution sale under A.R.S. § 33-1105." Id. at 755.
¶14 Under these authorities, § 33-1103(A)(4) enables a creditor to satisfy a judgment from property that is subject to a homestead, but the creditor can do so only by following the forced sale procedure in § 33-1105. See Evans , 135 Ariz. at 452, 661 P.2d 1148. For these reasons, even though PBW's judgment lien did not attach to the Home, PBW could have tried to satisfy the debt under § 33-1103(A)(4) by conducting a judicial sale under § 33-1105, but only if it could sell the Home for more than "the sum of the [Sepics'] homestead plus the amount of any consensual liens on the property having priority to the judgment ." A.R.S. § 33-1105 (emphasis added); see Evans , 135 Ariz. at 453, 661 P.2d 1148.
¶15 The Castleton Trust argues, and the record suggests, that PWB chose not to pursue its remedy under § 33-1105 because the Home was not worth enough. A senior lien on the home secured $937,500. This senior lien, combined with the $150,000 homestead exemption, meant that PWB could sell the Home under § 33-1105 only at a price exceeding $1,087,500. Under the short-sale the Sepics ultimately negotiated, the Home sold for only $535,000.
¶16 Without explaining why it did not invoke § 33-1105 while the Sepics owned the Home, PWB argues that the Judgment attached as a lien to the Home at the time of *1191 recording, and that the lien "runs with the land." Under this principle, PWB contends it has authority to force a sale of the Home now owned by the Castleton Trust. We disagree.
¶17 As previously stated, § 33-964 establishes the general rule that a judgment lien does not attach to homestead property, and that homeowners hold their homestead property free and clear of judgment liens. See A.R.S. § 33-964(B). Although it is true that once a lien has attached, it "runs with the land," this legal principle is not helpful to PWB because its judgment lien never attached to the Home in the first place.
II. Abandonment of the Homestead
¶18 PWB next argues that even if the homestead exemption prevented the Judgment Lien from attaching to the Home, the Sepics abandoned the protection of the homestead, and the superior court erred by finding otherwise. As relevant here, a homestead may be abandoned by "[a] transfer of the homestead property by deed of conveyance or contract for conveyance" or "[a] permanent removal of the claimant from the residence." A.R.S. § 33-1104(A).
¶19 PWB argues the Sepics abandoned their homestead when they conveyed the Home to the Fairbrook Trust prior to the short-sale. But when a homestead exemption is abandoned by a conveyance of the property, the judgment lien does not re-attach to the property upon the sale. Many years ago, our supreme court held that a judgment lien does not "revive" upon the sale of homestead property. See Sec. Tr. & Sav. Bank , 29 Ariz. 325, 332, 241 P. 515 (1925). The same is true today.
¶20 PWB also argues the Sepics abandoned their homestead under § 33-1104(A)(3) by vacating the Home four days before they sold it. Although that provision states that abandonment results from "[a] permanent removal of the claimant from the residence or the state," it also states that a homeowner "may remove from the homestead for up to two years" without abandoning the homestead exemption. A.R.S. § 33-1104(A)(3). Accordingly, the Sepics' departure from the Home shortly before its sale did not constitute an abandonment.
¶21 Because of the protection afforded by the homestead statutes, the Judgment never attached as a lien to the Home. Therefore, the Sepics conveyed the Home free and clear of the Judgment.[4]
III. Attorneys' Fees on Appeal
¶22 The Castleton Trust requests an award of attorneys' fees on appeal pursuant to A.R.S. § 12-1103(B), which permits the successful party in a quiet title action to recover fees if, "twenty days before bringing the action, he or she requests a quitclaim deed from the adverse party, tenders five dollars, and the adverse party refuses or neglects to comply." McCleary v. Tripodi , 243 Ariz. 197, 202, ¶ 26, 403 P.3d 1191 (App. 2017) (citing § 12-1103(B) ). Although it appears the Castleton Trust satisfied the requirements of § 12-1103(B), it has not yet formally prevailed on its quiet title counterclaim.
¶23 Accordingly, we deny the Castleton Trust's request for fees on appeal without prejudice. If the superior court awards the Castleton Trust attorneys' fees pursuant to § 12-1103(B) in further proceedings, it may also award the Castleton Trust its reasonable attorneys' fees incurred on appeal.
*1192 CONCLUSION
¶24 For the foregoing reasons, we affirm the entry of an injunction enjoining a Sheriff's sale of the Home. As the prevailing party, the Castleton Trust is entitled to its costs on appeal upon compliance with ARCAP 21.

The Sepics were the original trustees and beneficiaries of the Fairbrook Trust. As part of the short sale process, the Sepics transferred their beneficial interest in the Fairbrook Trust to a representative of a short-sale dealer.

The complaint also named the Fairbrook Trust, the Sepics, individually and as trustees of the Fairbrook Trust, and April Van Dyke, as successor trustee of the Fairbrook Trust. Stipulated judgments were entered resolving all claims against the Sepics and April Van Dyke.

After Evans , the Legislature amended § 33-1105 to eliminate a required appraisal process for a forced sale by a judgment creditor, but the substance of the statute remained unchanged. See In re Rand , 400 B.R. 749, 754 (Bankr. D. Ariz. 2008) (stating that "the statutory amendment has no effect on the analysis or reasoning of Evans " ). Only § 33-964(A) creates judgment liens, and it creates "no exception to the prohibition of any such [judgement] liens on homestead property." Id. We agree with the Rand court.

A minority of jurisdictions take the position that a judgment lien attaches to homestead property but remains "dormant or in abeyance as long as the homestead continues." See 3 Thompson on Real Property § 21.03(n), at 220-22 (David A. Thomas ed. 1994). Conversely, the majority view is that "a judgment is not a lien against premises impressed with the homestead character and subject to the homestead use and that an attachment or execution attempted to be levied thereon is absolutely void." Id . at 220. Arizona follows the majority approach. See Sec. Tr. & Sav. Bank, 29 Ariz. at 332, 241 P. 515 (holding that judgment liens "cannot be set up as valid liens" against homestead property); Union Oil, 23 Ariz. at 245, 202 P. 1077 ("[N]o lien shall be permitted to attach to the real property claimed as a homestead ..."); Evans , 135 Ariz. at 452, 661 P.2d 1148 ("[A] judgment lien does not attach to the excess value of the homestead ...").