NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

FORECLOSURE EXCESS PROCEEDS LLC, *Applicant/Appellant*,

*v.*

FARMINGTON GLEN HOMEOWNERS ASSOCIATION, et al.,
*Applicants/Appellees*.

No. 1 CA-CV 19-0296
FILED 2-6-2020

Appeal from the Superior Court in Maricopa County
No. CV2018-008898
The Honorable Lindsay P. Abramson, Judge *Pro Tempore*

**VACATED AND REMANDED**

COUNSEL

John N. Moore, Attorney at Law, Peoria
By John N. Moore
*Counsel for Applicant/Appellant*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maria Elena Cruz and Judge David B. Gass joined.

**W I N T H R O P**, Judge:

¶1 Foreclosure Excess Proceeds, LLC ("Foreclosure") appeals the superior court's order approving distribution of funds to Vantage West Credit Union ("Vantage") from the excess proceeds obtained through the sale of real property owned by Adam and Diana Jaramillo. Because the Jaramillos automatically held their interest in the real property as a homestead exempt from attachment, Vantage's recorded judgment did not attach as a lien to the homestead property. Accordingly, we vacate the superior court's ruling and remand for proceedings consistent with this decision.

## FACTS AND PROCEDURAL HISTORY

¶2 The Jaramillos purchased real property in Arizona and lived in a dwelling located on the property from May 2014 to October 2016. Vantage recorded a judgment against the Jaramillos in 2015 pursuant to Arizona Revised Statutes ("A.R.S.") section 33-961.

¶3 The Jaramillos filed bankruptcy in Texas in March 2017 and listed a Texas address as their residence. The Jaramillos did not move to avoid any judgment liens during the bankruptcy proceedings.

¶4 After the bankruptcy case closed, a trustee sold their Arizona real property at a trustee's sale on April 20, 2018, pursuant to the Jaramillos' deed of trust. The trustee sold the home and made disbursements to the beneficiary under the deed of trust. On June 12, 2018, the Jaramillos signed an agreement with Foreclosure assigning their right, title, and interest in the identifiable cash proceeds from the trustee's sale to Foreclosure.

¶5 The trustee deposited excess funds from the sale of the Jaramillos' real property totaling $36,594.82 with the Maricopa County Treasurer and filed a complaint for distribution of excess proceeds. Vantage filed an application for distribution of excess proceeds pursuant to its recorded judgment against the Jaramillos for $33,569.11. Foreclosure also filed an application for excess distribution seeking to collect on behalf of the Jaramillos pursuant to Arizona's homestead statutes, A.R.S. §§ 33-1101 to -1153.

¶6 After an evidentiary hearing, the court found that the Arizona homestead exemption did not apply because the Jaramillos "filed their bankruptcy petition with their Texas address" and noted that the Jaramillos did not present any evidence that they resided in Arizona at the time they filed their bankruptcy petition. Presumptively finding that Vantage's

recorded judgment became a lien on the Jaramillos' real property pursuant to A.R.S. § 33-964, Arizona's judgment lien statute, the court also noted that the Jaramillos did not move to avoid Vantage's recorded judgment lien in bankruptcy. The court thus found that Vantage had a superior claim to the excess proceeds under Arizona's priority distribution statute, A.R.S. § 33-812. The court ultimately approved distribution of $21,421.37 to Vantage and $15,113.45 to another entity.[1]

¶7 Foreclosure timely appealed, and we have jurisdiction pursuant to A.R.S. § 12-2101(A)(1).[2]

## ANALYSIS

¶8 This appeal requires us to analyze Arizona's homestead exemption and judgment lien statutes. We review questions of statutory interpretation *de novo*. *Rogone v. Correia*, 236 Ariz. 43, 49, ¶ 17 (App. 2014). We look to the statutes' language as the best indicator of legislative intent. *Id.* When the statutory language is clear, Arizona courts must follow it. *Jackson v. Phoenixflight Prods., Inc.*, 145 Ariz. 242, 245 (1985).

¶9 We liberally construe the homestead exemption statutes. *Pac. W. Bank v. Castleton*, 246 Ariz. 108, 110, ¶ 7 (App. 2018). When analyzing the relationship between the homestead exemption and judgment lien statutes, we keep in mind that the homestead exemption statutes are

---

[1] Pursuant to stipulation, the court approved distribution to Farmington Glen Homeowners Association ("Farmington"), which had also filed an application for distribution of excess proceeds. In its Opening Brief, Foreclosure does not challenge Farmington's receipt of the amount of excess proceeds related to its claim, stating that Farmington had priority distribution status as a homeowners' association under A.R.S. § 33-812. Foreclosure further advises that Farmington has already received its portion of the excess proceeds. Accordingly, our decision addresses solely the remaining portion of excess proceeds and its distribution as between Vantage and Foreclosure.

[2] Despite being served with the notice of appeal and subsequent orders of this court concerning the deadline for filing an answering brief, neither Vantage nor Farmington filed an answering brief. We could consider the failure to file an answering brief to constitute a confession of error; however, in our discretion we address the merits of the appeal. *See Summers Grp., Inc. v. Tempe Mech., LLC*, 231 Ariz. 571, 573, ¶ 7 n.6 (App. 2013).

"intended to preserve an amount of money equal to the value of the homestead exemption." *Evans v. Young*, 135 Ariz. 447, 450 (App. 1983) (citing *Union Oil Co. v. Norton-Morgan Commercial Co.*, 23 Ariz. 236, 242 (1922)); *see also In re Elia*, 198 B.R. 588, 600 (Bankr. D. Ariz. 1996) ("[A]mendments to the homestead exemption statutes reinforce the individual's right to a homestead exemption, now in most cases automatically, to preserve the individual's 'nest egg' in the property.").

I.      *Arizona Homestead Exemption Applies to Identifiable Cash Proceeds*

¶10      Foreclosure argues the Arizona homestead exemption applied automatically to the real property the Jaramillos owned and lived in, and applied to the identifiable cash proceeds from the sale of that property.

¶11      Arizona's homestead exemption statute provides that "[a]ny person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment . . . not exceeding one hundred fifty thousand dollars in value . . . [t]he person's interest in real property . . . upon which exists a dwelling house in which the person resides." A.R.S. § 33-1101(A)(1). The homestead exemption exists "by operation of law and no written claim or recording is required." A.R.S. § 33-1102(A).

¶12      The Jaramillos lived in the real property owned by them from 2014 to 2016 and filed their bankruptcy petition in 2017. Subject to certain exceptions not applicable here, by operation of law the Jaramillos automatically held their interest in the real property as a homestead exempt from attachment. A.R.S. §§ 33-1101(A)(1), -1102(A). That the Jaramillos listed their Texas address on their bankruptcy petition is inapposite. Residency in the property itself when filing a bankruptcy petition is not a prerequisite to establishing a homestead exemption. A.R.S. § 33-1101(A); *In re Calderon*, 507 B.R. 724, 730 (B.A.P. 9th Cir. 2014) (finding "continued occupancy of the residence" is not a prerequisite "to be entitled to claim a homestead exemption in the residence").

¶13      Arizona's homestead exemption statute provides that the homestead exemption "automatically attaches to the person's interest in identifiable cash proceeds from the voluntary or involuntary sale of the property. The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property . . . ." A.R.S. § 33-1101(C). Moreover, the statute permits a claimant to

remove from the residence or even the state of Arizona for up to two years without such action constituting abandonment of the exemption. A.R.S. § 33-1104(A)(3). Accordingly, when the trustee sold their home, the Jaramillos maintained a continuing exemption in the identifiable cash proceeds for eighteen months from the date of the sale. A.R.S. § 33-1101(C); *see In re Smith*, 515 B.R. 755, 761 (Bankr. D. Ariz. 2014) (finding no residency requirement for A.R.S. § 33-1101(C)). Foreclosure, their assignee, timely applied for distribution of the identifiable cash proceeds before the eighteen months expired. The homestead exemption therefore applies.

## II. *A Recorded Judgment Does Not Attach as a Lien to Homestead Property*

¶14 Foreclosure next argues that a recorded judgment on real property does not create a lien on homestead property; thus, Vantage cannot claim the remaining excess proceeds pursuant to its judicial lien. The superior court found that because the Jaramillos did not file motions in bankruptcy court to avoid Vantage's judicial lien, they did not avoid Vantage's lien and thus Vantage had a superior claim to the excess proceeds pursuant to A.R.S. § 33-812.

¶15 The statute relevant to Vantage's judicial lien states that a judgment recorded pursuant to A.R.S. § 33-961 shall become a judgment lien "on all real property of the judgment debtor *except real property exempt from execution, including homestead property*." A.R.S. § 33-964(A) (emphasis added). Further, except for consensual liens, "a recorded judgment shall not become a lien on any homestead property. Any person entitled to a homestead on real property as provided by law holds the homestead property free and clear of the judgment lien." A.R.S. § 33-964(B). Here, contrary to the superior court's presumptive finding, Vantage's recorded judgment did not become a lien on the Jaramillos' homestead property. A.R.S. § 33-964(A)-(B); *see also Pac. W. Bank*, 246 Ariz. at 112, ¶ 21 (concluding that a judgment never attached as a lien to the property owners' home). Accordingly, the Jaramillos did not need to move in their bankruptcy case to avoid a "non-existent lien" on their homestead property. *In re Rand*, 400 B.R. 749, 755 (Bankr. D. Ariz. 2008) (stating debtors in bankruptcy do not need to move to avoid non-existent liens on homestead properties).

¶16 Because Vantage's recorded judgment did not become a lien on the real property, Vantage had no claim to the excess proceeds as a lienholder under A.R.S. § 33-812. Foreclosure, however, as the Jaramillos' assignee, was entitled to any remaining excess proceeds pursuant to A.R.S.

§ 33-812(A)(5) (directing that, after payment in full to all higher priority status entities, "payment shall be made to the trustor").

## CONCLUSION

**¶17** Based on the foregoing, we vacate the superior court's order and remand for proceedings consistent with this decision. We award Foreclosure its costs on appeal, subject to compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA