IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**IN RE: TODD MICHAEL MCLAUCHLAN,**
*Debtor.*

———————————

No. CV-21-0095-CQ
Filed January 27, 2022

———————————

Certified Question from the
United States Bankruptcy Court for the District of Arizona
No. 0:19-bk-11236-PS
**QUESTION ANSWERED**

———————————

COUNSEL:

Kenneth E. Moyer (argued), Law Office of Kenneth E. Moyer, PLLC, Lake
Havasu City, Attorney for Todd McLauchlan

James L. Ugalde (argued), Jennings Haug Keleher McLeod, L.L.P., Phoenix,
Attorneys for Pacific Western Bank

JUSTICE BOLICK authored the opinion of the Court, in which CHIEF
JUSTICE BRUTINEL, VICE CHIEF JUSTICE TIMMER, and JUSTICES
LOPEZ, BEENE, MONTGOMERY, and KING joined.

———————————

JUSTICE BOLICK, opinion of the Court:

¶1          The United States Bankruptcy Court for the District of
Arizona certified to us the following question: Does a recorded judgment
lien attach to homestead property where the judgment debtor has equity in
excess of the amount exempt under Arizona law? Our answer is yes.

**BACKGROUND**

¶2    In 2015, Pacific Western Bank ("PWB") obtained a California judgment against Todd McLauchlan that was later domesticated and recorded in Arizona. In 2019, McLauchlan filed a Chapter 7 Bankruptcy petition. In his Schedule of Assets and Liabilities, McLauchlan identified an ownership interest in a residence, valued at approximately $530,000, and disclosed that another creditor held a note and deed of trust secured by the residence in the amount of $376,677. McLauchlan also claimed the statutory $150,000 homestead exemption in the residence with no objection from the trustee or any creditor.

¶3    PWB filed a proof of claim on December 6, 2019, asserting a claim for $668,482.14. Of that amount, $552,497.05 was secured by the recorded judgment lien, and $115,985.09 was unsecured. In July 2020, McLauchlan received his Chapter 7 discharge. The Order of Discharge stated that "a creditor with a lien may enforce a claim against debtors' property subject to that lien unless the lien was avoided or eliminated." PWB asserted that its judgment lien survived the discharge.

¶4    Following his discharge in bankruptcy, McLauchlan sold the residence. To allow the sale to close, McLauchlan and PWB entered into an "Escrow Agreement in Lieu of Foreclosure." McLauchlan subsequently closed the sale in August 2020 for $625,500, realizing a $206,852.58 profit after paying costs of the sale and consensual liens. Thus, McLauchlan realized $56,852.58 in excess of the $150,000 homestead exemption.

¶5    PWB then filed a motion in the bankruptcy court seeking a determination that McLauchlan's bankruptcy discharge did not affect PWB's interest in the residence secured by its recorded judgment. McLauchlan objected, arguing that under A.R.S. § 33-964(B), judgment liens do not attach to homestead property. The bankruptcy court then certified this question to us. Agreeing that no prior decision of this Court had addressed this question and that clarification is warranted, we agreed to answer the question. *See* A.R.S. § 12-1861; Ariz. R. Sup. Ct. 27.

**DISCUSSION**

**¶6** The question is one of statutory construction. "Our task in statutory construction is to effectuate the text if it is clear and unambiguous." *BSI Holdings, LLC v. Ariz. Dep't of Transp.*, 244 Ariz. 17, 19 ¶ 9 (2018). We resort to secondary interpretation tools only if the statutory language is ambiguous. *See State v. Burbey*, 243 Ariz. 145, 147 ¶ 7 (2017). "Words in statutes should be read in context in determining their meaning." *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017). In doing so, we seek to give meaning to every provision, so that none is rendered superfluous. *City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 552 ¶ 31 (2005).

**¶7** We begin with the homestead exemption statute, A.R.S. § 33-1101 (2004). It provides a $150,000 exemption from attachment, execution, and forced sale for, among other things, a "person's interest in real property in one compact body upon which exists a dwelling house in which the person resides." § 33-1101(A)–(A)(1) (2004). The statute states that the "exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead with the proceeds." § 33-1101(C) (2004). It further provides that a person or married couple may hold only one homestead exemption. § 33-1101(B)–(C) (2004).

**¶8** The language of the homestead exemption makes its purpose clear: individuals whose property is subject to foreclosure are not rendered homeless. *See, e.g.*, *Ferguson v. Roberts*, 64 Ariz. 357, 361 (1946) ("The chief object of these laws is to shelter the family . . . ."). Nothing in the statute suggests an aim to shield proceeds in excess of the exemption from creditors, nor to confer any financial benefits upon debtors beyond the exemption.

**¶9** Nonetheless, before 2007, a judgment lien did not attach to homestead property. *See, e.g.*, *Union Oil Co. of Ariz. v. Norton Morgan Com. Co.*, 23 Ariz. 236, 245–47 (1922); *Evans v. Young*, 135 Ariz. 447, 452–53 (App. 1983). At that time, A.R.S. § 33-964(A) (1999) provided that a judgment would become a lien on a debtor's real property "except real property exempt from execution." Before it was amended in 2007, § 33-964(B) (1999) stated, "A recorded judgment shall not become a lien upon any homestead

property.  Any person entitled to a homestead on real property as provided by law holds the homestead property free and clear of the judgment lien."

¶10      But that language was amended in 2007 to read: "Except as provided in § 33-1103, a recorded judgment shall not become a lien on any homestead property.  Any person entitled to a homestead on real property as provided by law holds the homestead property free and clear of the judgment lien."  § 33-964(B) (2007).

¶11      Following the statutory arrow to § 33-1103, as amended in 2007, we find that "[t]he homestead provided for in § 33-1101, subsection A is exempt from process and from sale under a judgment or lien, except:  . . . [t]o the extent that a judgment or other lien may be satisfied from the equity of the debtor exceeding the homestead exemption."  § 33-1103(A), (A)(4) (2007).

¶12      PWB takes a plain-meaning approach to the question.  The legislature in 2007, it contends, made a major change to § 33-964(B) when it added the preface, "[e]xcept as provided in § 33-1103."  That statute, in turn, provides an exception to the homestead shield when "a judgment or other lien may be satisfied from the equity of the debtor exceeding the homestead exemption."  § 33-1103(A)(4) (2007).  The circumstances here, PWB urges, fit within that exception.

¶13      We agree with PWB that the plain language of the statutes encompasses judgment liens that may be applied against property sale proceeds in excess of the homestead exemption.  Adding the prefatory language to § 33-964(B) (2007) clearly effected a substantive change in the law, creating an exception that did not previously exist to an otherwise generally applicable law.  Within that exception, § 33-1103(A)(4) (2007) speaks precisely to the application of a judgment lien to proceeds in excess of the homestead exemption.

¶14      McLauchlan counters with a different reading of the amended statutes, backed by legislative history and caselaw.  He notes that legislative history from the 2007 amendments suggests that their purpose was to add a new exception for child and spousal support liens in § 33-1103(A)(3) (2007).  That view is reflected in a federal bankruptcy court opinion that construed Arizona law, *In re Rand*, 400 B.R. 749, 754 (Bankr. D. Ariz. 2008)

4

("Thus it is logical to conclude that the exception in § 33-964(B) was added to avoid any conflict with this new exception to the homestead statute, so that there would be no doubt that a judgment lien could be created against homestead property when the judgment is for child support or spousal maintenance arrearages.").

¶15　　　　We cannot agree with *In re Rand*.  Legislative history is not a substitute for clear legislative language, and as we have noted, *supra* ¶ 6, we do not consider such history unless the language is ambiguous.  *See BSI Holdings, LLC*, 244 Ariz. at 19 ¶ 9.  As amended, § 33-964 (2007) provides an exception for § 33-1103 (2007) in its entirety.  An express exception renders inoperative the language to which the exception is directed as to the circumstances encompassed within the exception.  *Cf.* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 184 (2012) ("[T]he general/specific canon does not mean that the existence of a contradictory specific provision voids the general provision. Only its application to cases covered by the specific provision is suspended; it continues to govern all other cases.").  Were the exception limited to child and spousal support, as McLauchlan contends, the amended statute would only have referenced that new exception in § 33-1103(A)(3) (2007).  Absent the essential predicate of ambiguity, we cannot rewrite a statute based on the surmise that the legislature meant to draft it a different way.  *See Lewis v. Debord*, 238 Ariz. 28, 31–32 ¶ 11 (2015) ("It is not the function of the courts to rewrite statutes." (quoting *Orca Commc'ns Unlimited, LLC v. Noder*, 236 Ariz. 180, 182 ¶ 11 (2014))).  McLauchlan's argument renders the prefatory language of § 33-964(B) (2007) superfluous, a reading we cannot credit.  *See supra* ¶ 6; *Clear Channel Outdoor, Inc.*, 209 Ariz. at 552 ¶ 31.

¶16　　　　For that reason, we also disapprove similar verbiage in *Pacific Western Bank v. Castleton*, 246 Ariz. 108, 110–11 ¶¶ 11–14 (App. 2018), which relied largely on *In re Rand*.  In *Castleton*, the court of appeals stated that § 33-964 "establishes the general rule that a recorded judgment does not become a lien on homestead property."  *Id.* at 111 ¶ 11.  Although that is correct, the new prefatory language in the 2007 amendment created an exception that, by virtue of its reference to § 33-1103 (2007), included recovery against sale proceeds in excess of the homestead exemption.  The court acknowledged that "§ 33-1103(A)(4) enables a creditor to satisfy a judgment from property that is subject to a homestead," but "only by following the forced sale procedure in § 33-1105."  *Id.* ¶ 14.

¶17          We perceive no reason to treat proceeds in excess of the homestead exemption from a voluntary sale differently than proceeds from a forced sale.  Section 33-1103(A)(4) (2007) makes no such distinction, stating categorically that "a judgment or other lien may be satisfied from the equity of the debtor exceeding the homestead exemption."  Neither § 33-964 nor § 33-1103 make any reference to the forced sale procedure of § 33-1105.

¶18          Moreover, the homestead exemption statute itself treats both voluntary and forced sales the same for purposes of cash proceeds from sale of the property.  *See* § 33-1101(C) (2004) ("The homestead exemption, not exceeding [$150,000], automatically attaches to the person's interest in identifiable cash proceeds from the *voluntary or involuntary sale* of the property." (emphasis added)).  McLauchlan's argument that the statutes shield his property from a judgment lien would effectively increase the amount of the homestead exemption to include surplus revenues from a voluntary sale above $150,000.  As noted previously, *see supra* ¶ 7, § 33-1101 clearly limits the benefit to a single homestead exemption not exceeding $150,000 per person or married couple.  Were we to allow McLauchlan to shield such proceeds against a judgment lien, it would create a windfall inconsistent with the statutory scheme.

¶19          Finally, McLauchlan contends amendments to § 33-964 enacted in 2021, which clearly entitle judgment creditors to recover from proceeds in excess of the homestead exemption and establish procedures for doing so, demonstrate that the earlier version of the statute did not allow such recovery.  No such intent is manifest.  The legislature may have intended to merely clarify the law, or to legislatively overrule judicial interpretations of the prior statutory language.  Regardless, it is our job to construe the statutory language that was in effect at the time of the actions at issue here.  *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 461 (2002) (noting it is the role of courts to interpret statutes); *see also E.C. Garcia & Co. v. Ariz. State Dep't of Revenue*, 178 Ariz. 510, 517 (App. 1993) ("The proposition that one legislature can declare what an earlier legislature intended is a doubtful one.  It is the language of the statute which governs, and the unexpressed intent of the legislature has no application.").  That said, the new 2021 amendments to the statutes are commendable for providing greater clarity going forward.

## CONCLUSION

**¶20** We answer the question presented by the bankruptcy court in the affirmative. PWB requests attorney fees for the proceeding in this Court pursuant to A.R.S. § 12-341.01(A), but given the uncertainty of the law that prompted the certified question, we exercise our discretion to deny them.